Boutiller, Admr., v. The Steamboat Milwaukee.

---

PIERRE BOUTILLER, admr., &c. of FRANCIS BOUTILLER, Appellant, *vs.* THE STEAMBOAT MILWAUKEE, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The administrators of a deceased person may bring an action against a steamboat, by name, for the wrongful killing of their intestate.   *Chapters 68 and 76 of the Compiled Statutes commented upon and construed.*

Points and Authorities of Appellant.

I.—The question involved in this case is this :

Can an action to recover damages be maintained against a steamboat, for being wrongfully run upon and causing the death of a person ? We insist that it can. *Sub. 4 of sec.* 1, *p.* 647 *of the Compiled Statutes*, provides that such an action may be maintained for " injuries to persons."

This statute provides that every boat shall be liable for injuries done to a person, and may be sued by name. In the present case, had the party been injured, and death therefrom not ensued, the action would clearly be sustained. For the purpose of maintaining the suit to recover damages in such cases, the boat is treated and considered as a person. But where death is the result of the injury, does not the action survive in favor of the personal representatives under our statutes? We think it does, by *sec. 3, p.* 610 *of the Statutes.*

Points and Authorities of Respondent.

I.—The complaint does not state or set forth facts sufficient to constitute a cause of action. *Stat. of Minn., chap.* 68, *p.* 610, *secs.* 1 *and* 3.

a. *Actio personalis moritur cum persona.* 1 *Cush.*, 475; 9 *Cush.*, 480; *ib.*, 107; 3 *Duer.*, 637; 15 *N. Y.*, 436; 14 *B. Mon.*, 204; 1 *Handy*, 481; 10 *S. & R.*, 31; *all cited in Green vs. Hudson R. R. R. Co.*, 16 *How. Pr. R.*, 230.

b. The first section of the statute is merely declaratory of a well known principle of the Common Law ; and the exception contained in the third section, is in derogation of that principle, and cannot be extended by implication beyond the strict letter of the Statute, 16 *How.*, 230; 12 *How.*, 323; 21 *Barb.*, 245; 23 *N. Y. Rep.*, 465; *Opinion of Denio J.*

c. The third section of the statute must be construed with the first, (being a mere exception to the first section) and the only effect that can be given to it is to allow an action already commenced, to be maintained by the personal representatives of the injured party, notwithstanding his death. *See the language of the two sections.*

d. The *N. Y. Statutes of* 1847-9, (*laws of* 1847, *chap.* 450, *sec.* 1, *and Laws of* 1849, *chap.* 256, *secs.* 1 *and* 2), will be

found quoted at length in *Doldt vs. Wiswall*, 15 *How. Pr. R.*, 128 *in the syllabus.* And it seems that the *Statute of* 9 *and* 10 *Victoria* is very similar to the N. Y. Statute, both being departures from the Common Law. (16 *How. Pr. R.*, 239. *Note by Reporter.*) Similar laws exist in Wisconsin and Michigan. *Rev. Stat. of Wis.* (1858), *p.* 800-1, *secs.* 12, 13; *Comp. Laws of Mich.*, (1857), *vol.* 2, *p.* 1329, *chap.* 151.

But a comparison of our statute upon this subject, with those above referred to, shows that it falls far short of those statutes. They all create a new cause of action, arising upon the death of the party injured. The N. Y. acts of '47-9 provide that " whenever the death of a person shall be caused by the wrongful act, * * the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding," &c.

While our statute simply provides that "when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action against the latter, if," &c. *See the remarks of Denio J. in Whitford vs. the Panama R. R. Co.*, 23 *N. Y. Rep.*, 470, *4th line from top of page.*

. *e.* The word " maintain " as used in our statute, means to " hold, preserve or keep in any particular state or condition ; to sustain ; not to suffer to fail or decline" ; &c.   *Webster's unabridged.*

It does not mean to originate, to begin or to commence; either in its common or legal acceptation. The right to " maintain " an action merely removes a personal disability existing at Common Law, and by virtue of the first section of the statute. It does not create a new cause of action, as does the N. Y. statute.

Had Boutiller been injured and commenced his action, and then died, the action pending, the Common Law, and the first section of the statute, would have abated the action. The second section merely prevents this abatement, and allows the personal representatives to " maintain " it: *i. e.* to carry it on, not to commence an action *de novo.*

It may be that the legislature intended to create the same cause of action as the N. Y. statute gives: if so, they have

failed to do so, and the Courts cannot extend the letter of such a statute, by implication.

*f.* But if such an action is given by the statute, it cannot be brought in the name of the administrator. The personal representatives are the parties in interest, viz., the widow and children. The N. Y. statute expressly authorizes the suit to be brought in the name of the administrator. Ours does not. *See chap.* 60, *secs.* 27-29.

And the action cannot be maintained under section 29, because "the amount recovered is for the exclusive benefit of the widow and next of kin," and does not go into the general fund, as assets for creditors and others.

The statute does not "expressly authorize" any person to bring the suit, therefore it must be brought under the general statute, by the parties in interest.

*g.* The action (if any is given) is only against the person of the wrong-doer: no action is given *in rem.* Had the wrong been committed with a gun, sword or knife, in the hands of the wrong doer, no action lies against the gun, sword or knife. So in this case, the boat was a mere instrument in the hands of the wrong doer.

II.—The Plaintiff has no demand which he can enforce against the boat by name, under *chap.* 76, *Comp. Stat.* 647, entitled "Proceedings for the collection of demands against boats and vessels," under which this proceeding is commenced.

Sub. 4 of above act, gives a right of action "for all injuries done to persons or property by such boat or vessel." It does not give an action for damages for the *death* of a person, caused by the wrongful act of the boat. This, too, being a special statute, cannot be extended by implication to include actions upon cases not specially named in the act.

SMITH & GILMAN, Counsel for Appellant.

VAN ETTEN & OFFICER, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—This action is brought against the steamboat Milwaukee, by name, to recover damges for the killing of Francis Boutiller, by wrongfully run-

ning him down while in a small boat in the Mississippi river. The damages claimed are five thousand dollars. The action is brought under the act concerning boats and vessels, found on *page* 647 *of the Compiled Statutes,* and the act concerning "actions by and against executors, administrators," &c., found on *page* 610 *of the same book.* The complaint is demurred to, and the following points are made against its sufficiency :

That the action cannot be maintained against the boat at all.

That it cannot be maintained by the administrator, but by the widow and next of kin.

That when death ensues immediately from the acts complained of, no action survives, and it is only when the injured party commences an action for the injuries before his death that it can be prosecuted after.

These points are subdivided in the Defendant's brief, and elaborated, but the substance of them all is above stated.

We will examine them *seriatim :*

The statute which provides for the collection of demands against boats and vessels, so far as it is applicable to this case, is in these words :

" Every boat or vessel used in navigating the waters of this territory shall be liable for all injuries done to persons or property by such boat or vessel."

" Any person having a demand as aforesaid, instead of proceeding for the recovery thereof against the master, owner, agent or consignee of the boat or vessel, may at his option institute suit against such boat or vessel, by name." *Comp. Stat.,* 647.

The statute which authorizes an action by personal representatives, for personal injuries, after the death of the party injured, and against the maxim, *actio personalis moritur cum persona,* is in these words :

" When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury caused by the same act or omission by which the death is caused. The damages cannot exceed five thousand dollars, and the amount recovered is to be for the

exclusive benefit of the widow and next of kin," &c.   *Comp. Stats.*, 610.

It will be seen from the terms of the first act that the sole intention was to afford a remedy to injured parties directly against the vessel, instead of subjecting them to the difficult, and sometimes impracticable course of discovering the owners, or in cases of wilful trespass, prosecuting the delinquent agents, and depending upon their solvency for redress.   These vessels are generally owned by persons out of the State, which renders legal proceedings against them by our citizens, difficult and expensive, and the very nature of the vessel affords it such facilities for escape from the process of our courts, that an execution against its owners would generally be evaded.   The statute was evidently framed for the purpose of obviating these troubles.

We understand it to mean that whenever a cause of action accrues to a party, for any of the acts or omissions enumerated in the statute, which he might have prosecuted against the master, owner, agent, or consignee of the vessel, without the aid of the statute, he may now by *its* operation prosecute directly against the vessel by name.   We have no doubt that the injuries described in the complaint in this action, had they not resulted in the *death* of the injured party, would have given him an action against the boat by name.   The act being a wilful trespass, there is some doubt, perhaps, whether the owners, if they were not present, and in no manner directed or authorized it, would be liable, but there can be very little question that the master, and other agents of the owners, who propelled the boat upon the deceased, would have been answerable; and whoever has a demand for personal injuries inflicted by the boat, which he could sustain against either the master, owner, agent, or consignee, may, by virtue of the statute, maintain it directly against the boat.   This we regard as the test in all actions by the injured party against the vessel *in rem.*

Let us now see whether the act authorizing actions by the personal representatives of a deceased person, will include such a case as the one at bar.   Its words are: "When the death of one is caused by the wrongful act or omission of ano-

Boutiller, Admr., v. The Steamboat Milwaukee.

ther, the personal representatives of the former may maintain an action against the latter, if the former might have maintained an action, had he lived, against the latter for an injury caused by the same act or omission by which the death is caused." The test made by this act is, that in all cases where the wrongful act or omission would have given the injured party an action against the wrong doer, had he lived, his personal representatives may maintain one after his death. Suppose the same wrongful act complained of in this case, which is propelling the steamboat on the deceased, had resulted in breaking his leg or arm, or otherwise injuring him without causing death, we have shown above that an action would lie against the wrong doers, either master or agent, who committed the act, and also that it became optional with the injured party to proceed in such case against the boat. It is the "act or omission" that is the *ground* of the action, the injury being merely a consequence, the character of which measures the damages. If the boat is run upon the party, he may have his action for that violation of his personal rights. If he is not injured and the trespass is merely technical, he may recover but nominal damages. If his leg is broken, they would be considerable; yet in either case his cause of action would be equally good. Should he be killed by the act, the cause of action is saved by the statute to his personal representatives, and the death in this instance, as the technical trespass, and the greater injury in the others, measures the damages, which are limited to five thousand dollars. If we are right in supposing that it is the same cause of action, growing out of the wrongful act that the injured party might have prosecuted had he lived, that goes to the personal representatives on his death, then we think it follows, that any Defendant who could have been called on to respond by the principal, is equally responsible to the representatives. The cause of action was against the boat, or the parties perpetrating the wrong, had death not ensued : in our opinion, it is the same after death.

The next question is, whether the administrator is the proper party to prosecute the action. The statute uses the words " personal representatives." It is laid down in 2d *Williams*

*on Executors*, 967, that the term "personal representatives" is synonymous with "executors or administrators," if there is nothing in the context of the will which controls otherwise. *Laberton vs. Skeels*, 1 *Russ. & M.*, 587, is cited. In 2*d Story's Equity Jurisprudence*, section 1065, *b*, the same doctrine is laid down, and "personal representatives" are sometimes held to be administrators, and sometimes next of kin, according to the context of the instrument using the expression. In *Halloway vs. Clarkson*, 2 *Hare R.* 521, 523, cited in a note to section 1065, above referred to, Mr. Vice Chancellor Wigram said, "The disputed cases have generally arisen out of bequests to 'representatives,' 'legal representatives,' 'personal representatives,' and similar words, and not upon the words 'executors, administrators and assigns,' which occur in the present case. * * * If I were compelled to give an opinion upon this part of the case, I should say that the conclusion to be drawn from the more modern, not unsupported by some of the earlier cases, is this ; that under a gift simply to 'representatives,' 'legal representatives,' 'personal representatives,' and to 'executors and administrators,' the hand to receive the money is that of the person constituted representative by the Ecclesiastical Courts, but that such person will, in the absence of clear intention to the contrary, take the property as part of the estate of the person whose representative he is, and not beneficially."

In the light of these authorities, who is intended by the statute which speaks of "personal representatives"? In the first place, the chapter in which the provision appears, is entitled "Actions by or against executors, administrators," &c. In the next place, the section in which it occurs uses the words "personal representatives," and also the words "widow and next of kin." In providing by whom the action shall be maintained, the former expression is employed, and in declaring for whose benefit the amount recovered shall enure, the latter term is used. In providing the proportionate amounts in which the widow and next of kin shall share the sum recovered, the statute says it shall be distributed *to them*, and not *by* or *among* them, as would seem to be the better expression, was the money in their hands by the judgment. From the

context of the statute, we are of the opinion that the action is well brought in the name of the administrator for the benefit of the widow and next of kin.

The argument of the counsel that no action can be commenced or originated by the personal representatives, but that they can only carry on one which had been commenced by the injured party before his death, is founded upon the peculiar language used in the statute, which provides that the personal representatives may " *maintain* " an action, contending that the word " maintain," means " to hold, preserve, or keep in any particular state or condition ; to support ; to sustain ; not to suffer to fail or decline," &c.   Now, without in any manner controverting this definition of the word " maintain," in its ordinary and general use, we very much doubt whether its legal signification is so restricted.   There is no expression more common at the bar among the legal profession, than in speaking of the existence of a cause of action, to say, " Can an action be maintained upon these facts"? " Can an action be maintained upon this instrument" ?—using the word " maintain " as synonymous with the existence of a cause of action.   But, aside from this, we think the statute furnishes its own answer to the argument of the counsel. Whatever may be the ordinary signification of the word " legal " or otherwise, its particular sense cannot be doubted in reference to this act.   The language is that the personal representative " may maintain an action," if the deceased " might have maintained an action."   It cannot be seriously urged that the word " maintain," as used in speaking of the deceased having his action against the wrong doer, can mean other than commence, institute, or begin an action ; and the same expression occurring in the same sentence, in reference to the same subject, to wit, the suit against the trespasser, cannot reasonably be held to have two different significations.

The New York cases cited by the Counsel for the Defendants, have been carefully examined, and fail to change our views upon the statutes involved.

The demurrer should have been overruled.   The order is reversed and Defendant allowed to plead over in ten days from notice of the order to be entered upon this decision.