ANTELOPE SHEARING CORRAL v. CONSOLIDATED WAGON & MACHINE CO et al.

No. 3287.    Decided April 18, 1919.    (180 Pac. 597.)

1.  EXECUTION—TRANSFER OF PROPERTY—LIEN. No lien was acquired or could be acquired by a levy and sale under an execution after the judgment debtor's interest or title had been transferred by him to another. (Page 359.)

2.  HOMESTEAD—JUDGMENT. In action to quiet title to realty by one claiming under conveyance from a judgment debtor before an execution sale on the judgment purporting to sell plaintiff's property to satisfy debt involving questions of judgment lien against land and whether it had been judgment debtor's homestead, it was error to enter judgment for defendant without any determination as to whether land had been a homestead exempt from execution within Comp. Laws 1917, sections 2892, 6868. (Page 359.)

Appeal from District Court, Fourth District, Duchesne County; *A. B. Morgan*, Judge.

Action to quiet title by the Antelope Shearing Corral against Consolidated Wagon & Machine Company, and Reuben Wilkins, Sheriff of Duchesne County. From a judgment for defendant company and a dismissal of the complaint, plaintiff appeals.

REVERSED and REMANDED, with directions to grant a new trial, and with permission to amend pleadings or file additional pleadings.

*J. H. Hurd* of Salt Lake City, and *A. N. Alt* and *Fred L. Watrous,* both of Duchesne, for appellant.

*Morris & Callister* of Salt Lake City, and *E. H. Burgess* of Roosevelt, for respondents.

GIDEON, J.

This is an action to quiet title to real property. The complaint contains the usual allegations of ownership in the plaintiff; that the defendant company claims an interest in the premises adverse to plaintiff; that the defendant Wilkins, as sheriff, under an execution, on or about January 26, 1917, sold the same to the defendant machine company; that said execution was issued on a judgment theretofore obtained in favor of defendant company in an action wherein said company was plaintiff and one Elba Bentley was defendant. It is further alleged that a certificate of sale had been issued, and that unless the sheriff is restrained by an order of court he will, at the expiration of the period of redemption, execute a sheriff's deed pursuant to the sale; that the said certificate of sale does and the sheriff's deed when issued will constitute a cloud upon plaintiff's title.

By joint answer the allegations of ownership are denied. As a further defense a sale by the defendant sheriff under

and by virtue of an execution and purchase by defendant company at that sale is alleged. The prayer of the answer is for a dismissal of the action.

Plaintiff did not reply to the answer.

Judgment was entered dismissing the complaint and adjudging and decreeing the defendant company to be the owner of the land described in the complaint by virtue of the sheriff's sale. Plaintiff appeals.

At the trial no testimony was taken but an oral stipulation was read into the record, which purported to and did contain the facts upon which the decision of the trial court is based. The effect of the stipulation is that on May 17, 1915, one Elba Bentley was a resident of Duchesne county, Utah, and was the owner of the land in question; that he occupied it, made some improvements on it as his home, and built a house and resided thereon, and did some little farming. It is also stipulated that on November 17, 1915, the defendant machine company secured a judgment against Elba Bentley in the district court of Duchesne county in the sum of $233.64; that the same was docketed in the office of the clerk of said court. It is further stipulated that on June 8, 1916, said Bentley transferred the land in question by warranty deed to the plaintiff; that on or about January 26, 1917, an execution was issued upon said judgment and placed in the hands of defendant sheriff, who proceeded to levy upon and sell the land in controversy; that at said sale the defendant company was the purchaser and the sheriff issued to said company a certificate of sale. The period of redemption had expired prior to the trial, but subsequent to the institution of the action.

The stipulation concluded with the following statements by counsel:

"Counsel for Plaintiff: I believe that is about the stipulation with the exception, as we read it, it is expressly understood from the time Bentley received title to this land in 1915, until he sold it to the plaintiff in this matter, in May, 1916, or June. June 8, 1916, he used it and occupied it, and held it out to the world as his home, and he used it only as his home.

"Counsel for Defense: We are willing to admit or stipulate that he lived there, although the pleadings say nothing whatever

358        SUPREME COURT OF UTAH        [April

Antelope Shearing Corral v. Consol. W. & M. Co. et al., 54 Utah 355.

about it. To stipulate to what my brother has said would go outside of the complaint. Bentley was on the place and lived there, as I said before, but that is as far as we would go.

"Counsel for Plaintiff:   With his family?

"Counsel for Defense:   I believe he is a married man. But that is as far as we could go under the pleadings."

The court found that the judgment in favor of the machine company and against Bentley was entered and docketed on November 17, 1915, as stated in the stipulation; that at the time of docketing the judgment said Bentley was the owner and occupied and held the record title of the land described in the complaint; that on or about January 27, 1917, under and by virtue of a writ of execution issued out of said court on said judgment, a levy was made upon the premises, and the same were sold to the defendant company; that the sheriff issued a certificate of sale therefor on or about March 10, 1917. The court further found that Bentley and the plaintiff had actual and record notice of the judgment on the date it was docketed, and made the further finding of fact that plaintiff had "no right or claim in and to or upon the said land."

As conclusions of law it was found that the defendant company was the owner of the land sold under the sheriff's sale and was entitled to a judgment dismissing the action and to recover its costs incurred. The decree adjudged that the defendant machine company owned the land subject to redemption, and that the action be dismissed as to both defendants.

The court made no finding as to whether the premises in question constituted the homestead of Bentley at the date of the judgment or at any time prior to his alienation thereof on June 8, 1916. There is no allegation anywhere in the pleadings as to whether the land in controversy constituted or was the home or homestead of Elba Bentley at the date of sale by Bentley or at any time after the rendition of the judgment.

Manifestly no lien was acquired, or could be acquired, in favor of the defendant company by the levy and sale under the execution in January, 1917. Whatever interest or title the judgment debtor in that case (Bentley) had in the premises had been transferred to the plaintiff. If any lien existed it was by virtue of the lien having attached during the time

the title to the premises was retained by Bentley. *Smith* v. *Zimmerman*, 85 Wis. 542, 55 N. W. 956. By the provisions of Comp. Laws Utah 1917, section 6868, a judgment, when docketed, becomes a lien upon the property of the judgment debtor not exempt from execution in the county in which the judgment is given, owned by him at the rendition of the judgment or acquired thereafter during the life of the judgment. By section 2898 of the same compilation it is provided that each head of a family is entitled to a homestead consisting of lands and appurtenances, fixing the value, which ''shall be exempt from judgment lien * * * or forced sale, except as provided in this title.'' It is the contention of appellant that the premises in question, at the time of the   1, 2 entry of the judgment, and continuously until the date upon which the plaintiff became the owner of the premises, was the homestead of said Bentley; that the same was exempt from execution, and was not subject to or affected by any lien by reason of the judgment entered against Bentley, and that it was the duty of the court to make findings upon that question, and error on its part in failing to do so. Respondent contends that there was no issue in the pleadings respecting the question as to whether the premises was the homestead of Bentley; that, having failed to allege or prove that fact, the appellant is in no position to now complain of the court's failure to make a finding, upon that issue.

Bentley is not a party to this action. Neither was he the owner of or interested in the premises at the time of the sheriff's sale, or at any time after June 8, 1916. The plaintiff, manifestly, cannot claim a homestead in the premises. The sheriff did not sell the premises of the judgment debtor, Bentley, but was admittedly selling plaintiff's property to satisfy Bentley's debt. Either that judgment against Bentley was a lien upon the land in controversy or it was not. Unless so made by the statute, it constituted no lien. No such lien existed at common law. If the land constituted a homestead there was no lien. On the contrary, it is expressly provided by statute that it shall not be a lien. To hold that it was a lien without first determining the question as to whether it is

such property as is subject to a lien by the plain provisions of the statute is to give a judgment creditor a right in addition to what is given him by the statute. In other words, it in effect creates a lien in his favor simply by reason of the failure of the pleader to deny the existence of such lien or to state facts which would determine that the lien had never existed. If the state of the pleadings was such that the court could not grant the plaintiff any relief, clearly it was wrong in attempting to adjudicate and determine that the defendant company was the owner of the premises, primarily because there was no prayer for affirmative relief, and secondarily as there was no finding upon which such relief could be based.

In view of the unsatisfactory condition of the record it seems impossible to determine what are the respective rights of the parties or to do justice between them. For that reason we have concluded to reverse the judgment, and remand the cause to the district court of Duchesne county, with directions to grant a new trial; to permit the parties, if so advised, to amend their pleadings or to file additional pleadings. Such will be the order. Neither party shall recover costs on this appeal.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.