## FINERTY et al. v. FIRST NAT. BANK of DUNCAN.

No. 14107—Opinion Filed Sept. 18, 1923.

**1. Constitutional Law—Statutes—Construction of Provisions as a Whole.**

A section of the Constitution or of the statute must be construed so as to give effect, if possible, to it as an entirety, and render every word, phrase, and clause operative.

**2. Homestead—Urban Homestead—Acreage.**

The clause "and in no event shall the homestead be reduced to less than one quarter of an acre, without regard to value" by implication provides that such homestead may be reduced to one-quarter of an acre, having regard to value.

**3. Same—Value Limitation.**

Under the constitutional and statutory homestead provision, where an urban homestead is owned and occupied as a residence only, there is no limitation as to value, but the limitation is as to quantity only.

**4. Same—"Homestead."**

The term "homestead" means that tract of land which, being within the statutory limitations as to quantity and value, is owned and occupied as a homestead.

**5. Same—Excessive Acreage.**

Where an urban homestead owned and occupied as a residence only, in quantity .59 of an acre and of the value of $45,000, the same exceeds in quantity the homestead protected from forced sale by the homestead law.

**6. Same—Judgment Lien Upon Excess.**

A judgment lien does not attach to the homestead, but does attach to the excess in quantity above the homestead protected from forced sale for the payment of debts from the time the judgment is entered upon the docket.

**8. Same—Enforcement of Judgment Lien.**

Where an urban homestead is claimed and occupied for residence purposes only, in quantity .59 of an acre and of the value of $45,000, and a judgment lien has attached to the excess in quantity, the owner may select therefrom his homestead including the residence, having due regard for the rights of the judgment debtor; and if the owner shall fail or refuse to make such selection, the court in the exercise of its equitable powers may cause the homestead to be set aside, having due regard to the proper use of the homestead as a residence, and subject the excess in quantity to the satisfaction of the judgment.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by First National Bank of Duncan against F. P. Finerty, J. O. Galloway, and S..die Galloway. Judgment for plaintiff, and defendants appeal. . Reversed.

Stuart, Sharp & Cruce, for plaintiffs in error.

Wilson, Tomerlin & Threlkeld, and S. S. Chandler, Jr., for defendant in error.

Opinion by RAY, C. This is an equitable action brought to enforce a judgment lien claimed by the plaintiff to exist against the excess in quantity and value of the homestead of the defendants J. O. Galloway and wife in and to their homestead within the corporate limits of Oklahoma City. The defendants filed a general demurrer to the petition which was overruled and the defendants elected to stand upon their demurrer. The court thereupon rendered judgment for the plaintiff and the defendant appeals. The allegations of the petition necessary to an understanding of the issues are, that on the 27th day of May, 1922, the plaintiff recovered judgment in the district court of Oklahoma county against J. O. Galloway in the sum of $7,875 and $787.50 attorney's fees and interest and costs; and that, at the time of the rendition of the judgment, Galloway was the owner of the legal and equitable title to certain real estate in Wynan's Highland Terrace Addition to Oklahoma City in the aggregate quantity of .59 of an acre, and of the value of $45,000, which was, at the time of the rendition of the judgment, occupied by J. O. Galloway and his wife as a homestead; that the judgment was a lien against that portion of the land and improvements thereon in excess, of the sum of $5,000 in value from the day of the rendition of the judgment; that an execution was issued and returned by the sheriff "received this writ October 4, 1922, and cannot find any property either real or personal on which to levy on"; that on the 14th day of September, 1922, while the lien was in full force, the defendants J. O. Galloway and Sudie Galloway, his wife, conveyed the property to the defendant F. P. Finerty; that the conveyance to Finerty was subject to the superior and paramount lien of the plaintiff upon that portion of the land not exempt by law to Galloway and his wife; that the plaintiff was entitled to a decree setting aside to Finerty, as grantee. all that portion of the land exempt from forced sale, to wit, $5,000, to be realized from the sale thereof, and that the plaintiff was entitled to have its lien established and foreclosed.

The defendants having elected to stand upon their demurrer, the court entered judgment for the plaintiff decreeing plaintiff's judgment to be a lien upon the property from the date it was docketed, superior to the rights of the defendants or either of them except a homestead exemption of $5,000 cash to. be allowed to Finerty as grantee of the Galloways' homestead, to be paid to Finerty out of the proceeds of the sale of the property, and decreed that the property be advertised and sold in the manner provided by law for the sale of real property under execution.

This case presents for consideration the question as to whether a judgment lien attached to the excess in value or quantity of an urban homestead. We have been aided by the able and exhaustive briefs of counsel. They have reviewed the authorities bearing upon the question and given us the benefit of their construction of the homestead provisions of the Constitution and of the statute. It appears to us that no more could be said in presenting their respective contentions than has been said by counsel in their briefs.

The first thing to determine is what constitutes the excess, if any, above the homestead in this particular case. The property affected is in quantity .59 of an acre and of the value of $45,000. The value and the quantity together create the excess above the homestead protected from forced sale for the payment of debts. Does that excess consist of value or quantity? That must be determined by the language of the homestead act if possible. The language of the statute is identical with that of the Constitution. That provision is:

"The homestead within any city, town or village owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner; provided, that the same shall not exceed in value the sum of $5,000, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value."

In addition to the homestead within the city used exclusively for residence purposes, as in this case, the law provides for a rural homestead of not more than 160 acres of land and, in a city where the homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of $5,000. As to the rural homestead, there is no limit as to the value, the only limitation being that of quantity. In the urban homestead used for both residence and business purposes the limitation is $5,000 in value. As to the urban homestead, used exclusively for residence purposes, as in this case, two things are clear: (1) That if the homestead exceeds one-quarter of an acre the value is limited to $5,000; (2) if the homestead does not exceed in quantity one-quarter of an acre

there is no limitation as to the value. So it seems that it is the spirit of the homestead law that there shall be no limitation upon the value of the homestead except in city, town .or village, and a limitation upon the value attaches only when the homestead exceeds in quantity one-quarter of an acre or is used for business as well as residence purposes. In this case then does the excess above the homestead protected from forced sale for the payment of debts arise by reason of the excess in quantity or by reason of the excess in value? This brings us to a consideration of the clause "and in no event shall the homestead be reduced to less than one-quarter of an acre without regard to the value." This is the only instance in either the constitutional provision or the statute in which any reduction of the homestead is suggested. This reduction must be held to mean a reduction of the homestead claimed to the homestead provided by law. This clause, "and in no event shall the homestead be reduced to less than one-quarter of an acre without regard to the value," implies that the homestead claimed may be reduced to one-quarter of an acre. This cannot mean a voluntary reduction, for the owner, being joined by the spouse, may reduce the homestead to any quantity, or any value, or may waive the homestead right entirely. It can therefore refer only to an enforced reduction. When it refers to an enforced reduction it can only mean a reduction pursuant to a judgment or decree of the court. If the clause quoted does not, by implication, say, that the homestead may be reduced in quantity where the quality exceeds one-quarter of an acre and the value exceeds $5,000, then this clause has no meaning.

"A section of the statute must be construed so as to give effect, if possible, to it as an entirety, rendering every word, phrase and clause operative." Matthews v. Rucker, 67 Okla. 218, 170 Pac. 492.

Then, to give this clause a meaning, we are forced to the conclusion that where the homestead claimed exceeds in quantity one-quarter of an acre, and in value exceeds $5,000, the same may be reduced in quantity at the suit of a creditor to a point where the value of the homestead does not exceed $5,000, or to a minimum quantity of one-quarter of an acre. In other words, the statute appears to provide for a shrinkage in quantity as the value enhances above $5,000, but not below the minimum quantity of one-quarter of an acre. The clause quoted provides for a reduction in quantity, and in making such provision, it must have been in contemplation of the claims of creditors. As the homestead in the country is without limitation as to the value, and the homestead in the city, occupied for residence purposes only, is without limitation as to value, where it does not exceed in quantity one-quarter of an acre, and the only provision for a reduction of such homestead is a reduction of the quantity, and not of value, we conclude that there can be no excess in value where the homestead is used for residence purposes only, and that the excess is an excess in quantity only. While the .59 of an acre is not an excess in quantity allowed by law, if standing alone, yet, by reason of the excess in value, it becomes an excess quantity. The quantity must shrink as the value increases above .$5,000, but it may not shrink below one-quarter of an acre, nor to less than $5,000 in value. We are of the opinion, therefore, that in this case, where there is .59 acre in quantity, of the value of $45,000, that there is an excess in quantity above the homestead protected from forced sale for the payment of debts.

Having determined that, under the pleadings in this case, there was at the time of the rendition of the judgment an excess in quantity of the homestead of J. O. Galloway · and his wife above that allowed by law as a homestead protected from forced sale for the payment of debts, we are brought to the question, Did the judgment lien attach to such excess in quantity at the time the judgment was entered? We are of the opinion that that question must be answered in the affirmative.

Counsel for plaintiffs in error have reviewed the decisions of the various states, both for and against, and have discussed the principles involved. They have pointed out that the courts of the states of North Carolina, Illinois, and Nebraska, and Missouri, in one case, have held that the judgment lien attached and that the states of California, Washington, Utah, Arizona, and Montana have held to the contrary. They have discussed all of these cases and contend that the weight of authority is with their contention, and that that weight is made up of opinions from courts which are more in sympathy with the institutions and the laws of the western states, and should more readily be followed by this court. The state of California has generally been recognized as the leading state holding that the judgment lien does not attach. The question has been before the court of that state beginning with Barrett v. Sims, 59 Cal. 615; Lean v. Givens, 81 Pac. 128, and Boggs v. Dunn, 116 Pac. 743, and in all these cases they have held that the judgment lien did not attach. But an examination of these

cases shows that this conclusion is based upon the statutes of that state. The statutes of that state provide a particular method of setting off the excess and of subjecting it to the satisfaction of the judgment. It is held that the judgment lien does not attach but that under the statute the only way to subject the excess to the satisfaction of the judgment is by levying an execution as in attachment proceedings and the appraisal of the land by appraisers appointed for that purpose, and, that, in the event there is an excess, the lien attaches to such excess from the date of the levy. In other states, Washington, Montana, Utah and Arizona, they have statutes somewhat similar to that of California and have followed the California courts. Traders National Bank v. Schorr, 20 Wash. 1, 54 Pac 543; Vincent v. Vineyard, 24 Mont. 207, 61 Pac. 131; Antelope Shearing Corral Co. v. Consolidated Wagon & Machine Co., 54 Utah, 355, 180 Pac. 597; Union Oil Co. v. Norton Morgan Commercial Co. (Ariz.) 202 Pac. 1077. Counsel for plaintiff in error contend that these opinions are not based upon those statutes providing a method for the ascertainment of that excess but upon the proposition that an unascertained excess is an indefinite thing which is incapable of being subject to the lien of a judgment. We have carefully examined all the cases cited from those states and have been unable to find any suggestion in any of the cases that the decisions are based upon such principle. Such was the holding in Macke v. Byrd, 131 Mo. 682, 33 S. W. 448, 52 Am. St. Rep. 649, but that case was overruled in the subsequent case of White v. Spencer, 129 Am. St. Rep. 547. The case of Van Story v. Thornton (N. C.) 34 Am. St. Rep. 483, and the case of Moriarty v. Galt, 112 Ill. 373, have been recognized as the leading cases holding that the judgment lien attached to the excess in the homestead. Counsel for plaintiff in error contend that these cases should not be considered strongly persuasive in this jurisdiction for the reason that in those states the courts have held that the judgment lien attached to the homestead and, although the lien could not at that time be enforced, the lien became dormant and revived upon the abandonment of the homestead, while in this state the lien does not attach to the homestead. Gray v. Deal, 50 Okla. 89, 151 Pac. 205; Gerlach Bank v. Allen, 51 Okla. 736, 152 Pac. 399; Hedgepath v. Hudson, 61 Okla. 121, 160 Pac. 604; Garrison v. Carl. 64 Okla. 14, 166 Pac. 152; Field v. Goat, 70 Oklahoma, 173 Pac. 364. This court has held that there can be no dormant lien; that when the lien becomes dormant it ceases to be a lien. Garrison v.

Carl, 64 Okla. 14, 166 Pac. 152. In this particular we agree with the plaintiff in error. The homestead statute of Missouri is more nearly like ours than any we have examined. In the earlier cases and especially in the case of Macke v. Byrd, supra, it was held that the judgment lien did not attach to the excess of the homestead, but in the case of White v. Spencer (Mo.) 129 Am. St. Rep. 547, the court, after reviewing the earlier decisions, reached a contrary opinion. The opinion was written by Graves, Justice, in Division No. 1, who requested that the case should be certified to the court in bank for its final determination for the reason that the views therein expressed were in conflict with the construction of the statute made in the case of Macke v. Byrd, and the court in bank adopted the opinion with all the judges concurring. In that case it was held that whenever there is a surplus in the homestead, either in value or quantity, there may be a judgment lien as to such surplus, leaving it to future selection and admeasurement to determine the exact dimensions of such surplus. In the case of Harrison et al. v. First Nat'l Bank of Louisville (Tex.) 224 S. W. 269, the Court of Civil Appeals, after reviewing all the cases here referred to, held that the judgment lien attached to the excess in value of an urban homestead and quoted with approval from Freeman on Execution (2nd Ed.) 249, as follows:

"In some of the states the premises occupied as a homestead may all be embraced in the declaration or claim of homestead, though their value is far in excess of the amount which the statute permits to be retained as exempt. In the event of this levy of an execution on such premises, certain proceedings designated in the statute may be taken for the purpose of setting aside to the debtor the amount to which he is entitled, and subjecting the balance to execution. In such a case, what is the effect of judgment liens? Do they attach so as to entitle their holders to claim the proceeds of the homestead in excess of the amount which the debtor may retain? It has been said that in such circumstances 'there is no lien of the judgment until the levy of an execution.' From this conclusion we dissent. A judgment lien attaches to all the real property of the defendant not exempt from execution. That part of the property claimed as a homestead in excess of the amount which the debtor may retain as exempt, is at all times subject to execution and to forced sale, and there is therefore no reason why creditors may not, with respect thereto, obtain the benefits both of judgment and attachment liens."

In most of the cases it is said the decision rests upon the Constitution or statute

of the particular state. Section 5148, Rev. Laws 1910 (sec. 690, Comp. Stat. 1921). provides:

"Judgments of courts of record of this state, except county courts, and of courts of the United States . rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered from and after the time the judgment is entered on the judgment docket."

This, of course. must be considered together with the homestead act. Article 12, sec. 2, Const. (Comp. Stat. 1921, sec. 6597), provides:

"The homestead of the family shall be and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon."

The homestead act exempts the homestead from the lien. But what is meant by the word homestead as there used? In McCray v. Miller, Bland v. Bland, 78 Okla. 16, 184 Pac. 781, Justice Rainey quotes with approval the definition of the term homestead laid down in White v. Spencer, supra, as follows:

"The term 'homestead' means that tract of land which, being within the statutory limitations as to quantity, and value, is occupied and claimed as a homestead."

Again, in White v. Spencer, it was said:

"We have properly construed the homestead act to mean that no lien attached to a homestead proper, that is, to the tract owned, occupied and claimed as a homestead, when it falls within the statutory limitations as to quantity and value."

In this state the judgment lien does not attach to the homestead, that is, to that part of the homestead claimed which falls within the statute, as to quantity and value. But what of that quantity in excess of the limitations as to quantity? It is real estate and not exempt to the owner or to the family. A judgment lien attaches to the real estate of the judgment debtor from the time the judgment is docketed. It so attaches to all the real estate not exempt by law. In this case we think the judgment lien attached to that quantity in excess of the homestead protected from forced sale Notwithstanding that the judgment lien attached to the excess in quantity. under the homestead provision which gives the owner the right of selection, we think that Finerty, as the grantee of the homestead rights of the Galloways. has the right

to waive the excess in value above $5,000 and hold the .59 of an acre, or to select the one-quarter of an acre including the residence, provided such selection is not manifestly made in disregard of the rights of the defendant in error. Elliott v. Bond, 72 Oklahoma, 176 Pac. 242. If Finerty should fail or refuse to select, then the court in the exercise of its equitable powers, having due regard to the proper use of the homestead as a residence. may cause the homestead of one-quarter of an acre, including the residence, to be set apart to Finerty and subject the excess in quantity to the satisfaction of the judgment.

The petition was framed upon the theory that the judgment lien attached to the excess in value, and the trial court proceeded upon that theory. In view of the conclusions here reached that the excess is in quantity and not in value, we think the judgment should be reversed and remanded with directions to proceed in accordance with this opinion.

By the Court: It is so ordered.