### BAUGH v. LITTLE et al.

No. 19135. Opinion Filed Oct. 1, 1929.

Rehearing Denied Dec. 3, 1929.

Bowling & Farmer, for plaintiff in error.

Mac Q. Williamson, for defendants in error.

TEEHEE, C. On June 15, 1925, plaintiff in error, R. G. Baugh, in the name of the state, brought suit against the defendants in error J. F. Little, J. E. Gillian. and A. N. Brown, as trustees and officers of consolidated school district No. 3, Garvin county, and against said school district, to recover the sum of $1,350, this being twice the amount of monies alleged to have been illegally paid out of the school funds of said school district by the trustees named as defendants, and being the penalty for which said defendant trustees, by reason of such illegal expenditures, have become liable.

It was alleged that the funds were so illegally paid out from time to time beginning on September 17, 1924, to and including January 22, 1925, during the fiscal year of 1924, warrants therefor having been issued in the name of O. D. Longley and T. W. Butts, who had contracted with the said school district for the transportation of pupils, which contracts, it was alleged, were made for the benefit of the defendant trustees.

It was further alleged that demand in writing had been made upon said defendants as trustees of said school district by more than ten resident taxpayers of the district that they bring suit to recover the monies so illegally expended, which suit defendant trustees had failed to bring, and that the suit was thereupon brought in the name of the state by plaintiff as a resident taxpayer of said school district; and that the defendant trustees and each of them were liable in twice the amount of such illegal expenditures, jointly and severally, for which judgment was prayed.

By answer, the defendant trustees denied each and every material allegation made by plaintiff applicable to them, and further admitted the contracts made with said O. D. Longley and T. W. Butts, alleging that the same were made in good faith; that such acts as were performed by them in the transportation of pupils were in the best interests of the district and without profit to them, and were so performed without any effort to defraud said district; that without such acts on their part, the district would have been compelled to have made a larger outlay of expenditures in the transportation of pupils; and that said action was not brought by plaintiff in good faith. Plaintiff denied all new matter set up in the answer.

On June 15, 1927, the cause proceeded to trial before a jury. At the conclusion of the evidence, the cause was withdrawn from the jury, whereupon plaintiff moved for judgment, and that another party be substituted as plaintiff, which motions were by the court overruled; and the court having taken the matter under advisement, judgment, on September 6, 1927, was rendered for the defendant trustees of the said school district. Under the theory on which the court proceeded, the judgment in effect was a dis-

missal of the action as in abatement for want of a proper party plaintiff capable of proceeding therein.

The question submitted for our consideration, therefore, is stated by plaintiff, to-wit:

"There is only one proposition left for this court to determine, and that is whether or not the cause of action abated by reason of the said R. G. Baugh removing from the county after he had filed the suit, and the defendants had been summoned and had appeared in court and filed a motion to make the petition more definite and certain and a demurrer. It is admitted that R. G. Baugh was a resident taxpayer at the time the suit was filed on the 15th day of June, 1925, and that he continued to reside in the said school district until January, 1926."

Thereunder plaintiff advances the theory that as he was a resident taxpayer at the time of the filing of the action, the fact that he was not such a resident taxpayer at the time of the trial of the cause did not operate to defeat the jurisdiction of the court as in abatement of the action; whereas defendants contend that plaintiff's removal from the school district disabled him from maintaining the cause for that he was no longer a resident taxpayer, who only in the circumstances of the case by law was authorized to prosecute the action to a finality, and thus abatement followed. These conflicting views, therefore, call for a consideration and construction of the relevant law of the state whereunder the action was brought.

By section 10383, C. O. S. 1921, it is provided:

"Every officer of any school district who shall hereafter order or direct the payment of any money or transfer of any property belonging to school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any school district, by any officer or officer (sic) thereof, and every person having notice of the facts with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall hereafter be paid, or such transfer of property shall be made, shall be jointly and severally liable in damages to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the school district affected for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty to be recovered at the suit of the proper officers of such school district, or of any resident taxpayer thereof, as hereinafter provided."

Section 10384, Id., provides:

"That upon the refusal, failure, or neglect of the proper officers of any school district, after written demand made upon them by ten resident taxpayers of such school district, to institute or diligently prosecute the proper proceedings at law or in equity for the recovery of any money or property belonging to such school district, paid out or transferred by any officers thereof, in pursuance of any unauthorized, unlawful, fraudulent or void contract, made or attempted to be made by any of its officers for any such school district, or for the penalty provided in the section preceding, any resident taxpayer of such school district affected by such payment or transfer after serving the notice aforesaid and after giving security for costs may, in the name of the state of Oklahoma, as plaintiff, institute and maintain any proper action at law or in equity which the proper officer of the school district might institute and maintain for the recovery of such property, or for said penalty and any such school district shall, in such event, be made defendant, and one-half the amount of money and one-half of the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section shall be paid to such resident taxpayer as a reward."

Plaintiff's contention, in effect, is that the terms "institute" and "maintain," used by the Legislature, have an interchangeable application, either of which in itself is all comprehensive and means "to begin and prosecute the action to final judgment," and which construction is thus decisive of the cause in his favor, in that jurisdiction having become attached at the institution of the suit, the court was not thereafter ousted thereof; citing New Carlisle Bank v. Brown, 5 O. C. D. 94; Kinsey & Co. v. Ohio Southern Ry. Co., 3 Ohio S. & C. P. Dec. 249; Boutiller v. Milwaukee, 8 Minn. 97; 5 Words & Phrases. First Series, 4277; 32 C. J. 941, and 38 C. J. 334. There can be no doubt that where the term "institute" and the term "maintain" are used singly, or without relation of the one to the other, they are generally construed to signify the entire course of the litigation, the alpha and the omega thereof. School District No. 9, Kingman County, v. Brand, 71 Kan. 728, 81 Pac. 473; New Carlisle Bank v. Brown, supra.

The terms likewise have been given a less comprehensive meaning. In Latham v. Latham, 178 N. C. 12, 100 S. E. 131, it was said "that the term 'institute,' when applied to legal proceedings, signifies the commencement of the proceedings; when we talk of instituting an action, we understand bringing an action." In Roullard v. Gray, 38 Cal.,

App. 79, 175 Pac. 479, it was said that "to maintain an action is not the same as to commence an action, but implies that the action has already been commenced. 'The verb "maintain," in pleading, has a distinct technical signification. It signifies to support what has already been brought into existence'." For other cases, see Words and Phrases, First, Second, and Third Series, under the particular terms.

The broad construction of the terms contended for by plaintiff supports the rule of continuing jurisdiction upon attachment thereof by him relied on, which is stated by the author in 15 C. J. 822, to wit:

"It is well established, as a general rule, that jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance. So where jurisdiction of the person or of the res has once attached, it is not defeated by a removal of the person or the res beyond the jurisdiction of the court."

In Upton v. New Jersey Southern Railroad Co., 25 N. J. Eq. 372, the rule was stated as follows:  ,

"When the jurisdiction of a state court has once attached to a suit, no subsequent change in the condition or residence of a party can oust it, without express provision to that effect."

, The rule is here controlling, unless the language of the law of authority for the institution and maintenance of the action creates an exception thereof, for, as was said in Koppel v. Heinrichs, 1 Barb. (N. Y.) 449:

"If there can be said to be any exception to this rule, it is when such a change in the parties takes place after the commencement of the suit as to work an abatement."

The case therefore does not turn on the construction of the terms "institute" and "maintain," but upon the question as originally stated by plaintiff, that is to say, whether or not the party bringing the action, from the time of its commencement to the time of its adjudication, must in fact be a resident taxpayer of the school district affected thereby.

The statute appears to be self-declaratory of the conditions under which such an action may be instituted and maintained. It distinctly provides that upon failure of the proper officers to so do, after demand has been made by not less than ten resident taxpayers of the school district to be affected by the action, the right thereof accrues to any resident taxpayer of such school district, whereupon such resident taxpayer may institute and maintain the action at his ex-

pense, and in the event of a recovery one-half of the money or one-half of the value of the property recovered shall be paid to the plaintiff resident taxpayer as a reward for thus having prosecuted the action to adjudication. Accordingly, under the legislative language, it would seem that the plaintiff must at all times be a resident taxpayer of the school district affected by the action, for it is a well-settled rule of statutory construction that "a statute will be given a construction which renders every word operative rather than one which makes some words idle and nugatory." Integrity Mutual Casualty Co. v. Garrett, 100 Okla. 185, 229 Pac. 282; Finerty v. First Nat. Bank of Duncan, 92 Okla. 102, 218 Pac. 859; Meads v. Human, 84 Okla. 82, 202 Pac. 797. And the statute being penal in its character, the legislative language cannot be extended beyond the clear meaning thereof; that is to say, the same must be given a strict construction which is the equivalent of the ordinary meaning of the words used. Territory ex rel. Johnston v. Woolsey, 35 Okla. 545, 130 Pac. 934.

In the Johnston Case the court considered and construed what are now sections 8590 and 8591, C. O. S. 1921, which are identical both in language and purport with the sections under which this action was brought, the distinction being said sections 8590 and 8591 are general statutes upon the subject, whereas said sections 10383 and 10384 are special statutes and have application only to school districts. The action was brought in the name of the state by the county attorney, and against the mayor, the members of the city council, and the trustees of the city of Perry to recover twice the amount of funds alleged to have been misappropriated by the defendants. Among other things, the court held that the county attorney was without authority to maintain the action, and observed:

"That the action is a statutory one, and he who seeks to prosecute it must find all of his authority within the terms of the statute."

And further:

"The statute, however, does not authorize the action to be maintained in the name of the territory or state on relation of the county attorney. The state has no interest in the action; it receives no benefit from its prosecution; and, although it is made by the statute the nominal party, the real parties in interest are the informers and the city, which, by the statute, is required to be made a defendant; and the only persons authorized to inform and prosecute the action in the name of the state are resident taxpayers. In so far as the statute authorizes the recov-

209

ery of a penalty, the rule of strict construction applies as to who may recover, and only those named in the statute may prosecute the action; and, since the county attorney is not named, he is without authority to prosecute the action, either in his own name, or in the name of the state."

These observations of the court appear to support fully defendant's contention that where the action is not brought by the proper officials of the school district, the plaintiff must not only be a resident and a taxpayer of such district at the time of the institution of the suit, but that he must also have a like status at the time of the adjudication of the cause in order that the judgment of the court should conform to the statute, in that one-half of the recovery shall be awarded to the plaintiff resident taxpayer. This is to say that the right of the resident taxpayer to institute and maintain the action is one of personal privilege, and in the exercise thereof he must answer the statute.

Measureably, the term "resident taxpayer" is synonymous with the term "qualified property taxpaying voters," used in section 27, article 10, state Constitution, which, as is well understood, means a taxpayer who is a resident of the state for one year, the county for six months, and the precinct in which he votes for 30 days to the time of the exercise of the privilege to vote, or, in other words, a resident property taxpayer. See Williams v. Norman, 85 Okla. 230, 205 Pac. 144.

Dorsey v. Brigham, 177 Ill. 250, 52 N. E. 303, defines the term "resident" as follows:

"A resident of a place is one whose place of abode is there and who has no present intention of removing therefrom."

See, also, Pope, Legal Definitions, 1401; 7 Words and Phrases, First Series, 6162.

Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. 673, defines the term "taxpayer" as follows:

"A taxpayer is * * * 'a person chargeable with a tax'," " 'a person owning property in the state subject to taxation and on which he regularly pays taxes'."

See, also, 7 Words and Phrases, Third Series, 403.

These definitions of the two terms may be said to constitute their meaning in the ordinary sense, and as there appears to be no contrary legislative intent disclosed by the statute in which the terms are used, such definitions meet the rule of construction

as fixed by section 3528, C. O. S. 1921, in that "words used in any statute are to be understood in their ordinary sense," which rule harmonizes with the rules of construction above adverted to.

In Baxter v. Baxter, 43 N. J. Eq. 82, 10 Atl. 814, it is said that:

"The rule must be regarded as fundamental, that no person can maintain an action respecting a subject-matter, in respect to which he has no interest, right or duty, either personal or fiduciary."

See, also, 19 C. J. 982, sections 84 and 85. The rule is equally fundamental that "the action being one of purely statutory origin, can be maintained only in the manner and under the conditions named in the statute." Rowe v. Richards, 32 S. D. 66, 142 N. W. 664, L. R. A. 1915E, 1069; 20 R. C. L. 664, section 4. These elementary principles and the controlling rules of statutory construction foreshadow our opinion in this case, for, in the language of Barker v. Hannibal & St. Joseph Ry. Co., 91 Mo. 86, 14 S. W. 281, a case analogous in principle:

"In conferring the right of action, and in providing such remedy, in designating when, and by whom, suits may be brought, it was, as a matter of course, competent for the Legislature to provide and impose such conditions as it might deem proper, and the conditions thus imposed modify and qualify the right of recovery, or form, rather, we think, a part of the right itself, and upon which its exercise depends."

Considering the legislative language in the ordinary signification thereof, therefore, we are of the opinion that where an action is brought by a resident taxpayer of the school district affected thereby, pursuant to the provisions of sections 10383 and 10384, C. O. S. 1921, in order to maintain such action to adjudication, it is essential that the plaintiff retain his status as such resident taxpayer, and that if at the trial of the cause it appears from the evidence that the plaintiff has removed from such school district, it is not error for the court to dismiss the action as in abatement thereof for want of a proper party plaintiff capable of proceeding therein to judgment. It so appeared at the trial of the cause at bar.

The judgment of the district court is therefore affirmed.

LEACH, HERR, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

FOSTER, C., dissents.

By the Court: It is so ordered.