Argued September 11, affirmed November 29, 1967

CLAWSON, *Appellant, v.* ANDERSON ET UX,
*Respondents,*

and

SHEPARD & MORSE LUMBER COM-
PANY, *Intervenor-Respondent.*

434 P. 2d 462

*George G. Van Natta,* St. Helens, argued the cause and filed a brief for appellant.

*David O. Bennett,* St. Helens, argued the cause and filed a brief for intervenor-respondent. With him on the brief were Bennett & Vagt, St. Helens.

*Paul L. Jolma,* Clatskanie, argued the cause and filed a brief for respondents.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and LUSK, Justices.

O'CONNELL, J.

This suit, which began as an action of ejectment, was tried in equity after Shepard & Morse Lumber Company intervened by filing a suit to quiet title. Plaintiff appeals from a decree quieting title in Donald and Elsie Anderson and granting other relief.

The series of transactions in the case date back to October 18, 1950, when Guy and Jessie Hendricks executed a mortgage on the property in question to Shepard & Morse Lumber Company, the intervenor. The mortgage recited that it was given to secure the payment of $15,000, the indebtedness consisting of a note for $10,000 and "the further sum of five thousand dollars which shall be advanced to the said Guy Hendricks at a future date."

The Hendricks recorded a notice of homestead exemption claim on the mortgaged property on April 4, 1956, reciting that the premises had an estimated value of $10,000 and were encumbered by a mortgage in the amount of $6,000. The maximum homestead exemption at that time was $5,000.

On June 14, 1956, plaintiff obtained and docketed a judgment against the Hendrickses for $2,400. On April 12, 1957 the Hendrickses conveyed the property to Shepard & Morse Lumber Company in satisfaction of their debt. On December 10, 1957, Shepard & Morse Lumber Company sold the property to defendants by land sale contract.

Not until June 14, 1964 did plaintiff obtain a writ of execution and on August 17, 1964 the sheriff made

the levy and sold the property to plaintiff for $2,400, the amount of his judgment.

Plaintiff contends that through the execution sale and sheriff's deed he acquired title free of the homestead exemption because it had been waived by abandonment prior to the transfer of title to Shepard & Morse Lumber Company.

██ The evidence does not establish an abandonment of the homestead claim. Therefore, the title which passed to Shepard & Morse Lumber Company carried with it the benefit of the homestead exemption. In *Fleischhauer v. Bilstad,* 233 Or 578, 379 P2d 880 (1963), we held that the grantee of the homestead owner "took the property free from the lien of the plaintiff's judgment" unless prior to the conveyance the homestead claim had been abandoned. (Id. at 587-588). This was not intended to mean that the transfer of property claimed as a homestead automatically destroys the lien of a judgment. We meant only that the judgment lien does not attach "to that part of the homestead claimed which falls within the statute as to quantity and value," but that it does attach to any quantity of land or value in excess of the homestead exemption. *Finerty v. First National Bank,* 92 Okla 102, 106, 218 P 859, 863, 32 ALR 1326, 1332 (1923).[1]

A question is presented as to the methods which are available to the creditor for reaching the excess.[2] When the homestead property is held by the homestead claimant, ORS 23.270 provides the procedure for determining and separating the excess in value or quantity from the maximum exemption allowed under ORS

[1] There are cases which hold that a judgment does not become a lien even as to the excess. See 32 ALR 1333, 1336 (1924).

[2] See generally, Haskins, Homestead Exemptions, 63 Harv L Rev 1289, 1312-15 (1950).

23.250.[9] However, there is no statutory provision establishing the procedure for a determination and separation of the excess when the land is in the hands of the grantee of the homestead claimant.

■ In *Union Oil Co. v. Norton-Morgan Commercial Co.*, 23 Ariz 236, 202 P 1077 (1922), a statute similar to ORS 23.270 was construed as indicating a legislative intent to deny the lien creditor the right to reach the excess over the homestead claim once the property had been conveyed to the homestead claimant's grantee. We do not think that this is a reasonable construction of the statute. It is more reasonable to explain the failure to cover the case where the property is in the hands of a grantee as a casus omissus. We so interpret our statute.

■■ How, then, can the creditor reach the excess if any, when the property is owned by the grantee? The creditor has no right whatsoever in the land unless there is an excess over and above the homestead exemp-

---

[9] ORS 23.270 provides as follows:

"(1) Whenever a levy is made upon a homestead, the owner thereof, or the owner's spouse, parent or child, agent or attorney, may notify the officer making the levy, at any time before the sale, that he claims a homestead in such lands, giving a description of the quantity of land claimed as a homestead and an estimate of the value thereof, and the remainder alone shall be subject to sale under such levy, unless the plaintiff in the execution shall deny the right to such homestead, or be dissatisfied with the quantity or estimate of the value of the land so claimed. If the plaintiff is so dissatisfied, he may direct the officer making the levy to select three disinterested freeholders of the county, who shall examine and appraise, under oath, the lands and improvements, and if the praised value exceeds $7,500, said freeholders may cause to be surveyed and shall set off in compact form, including the dwelling house and appurtenances, so much of the land claimed as a homestead to the amount in value of $7,500, and the remainder alone shall be subject to sale under such levy. * * * [P]rovided, however, that no sale shall be made in the case last mentioned unless a greater sum than $7,500 is bid for said premises. * * *"

tion, and if there is no excess, there is nothing upon which to levy execution and nothing which can pass to a purchaser at the execution sale.[4] It follows, therefore, that before there is an effective levy of execution, the question of whether an excess is available for levy must be resolved by some kind of a proceeding in which that issue can be raised.[5]

■ A proceeding initiated by way of a creditor's bill would seem to be the most appropriate.[6] It would be necessary for the plaintiff to allege in the creditor's bill that an excess existed and the defendant could join issue in his answer. Evidence could then be introduced to establish the value of the property and if it were shown that there was an excess, plaintiff could levy upon it.[7]

■ In the present case there was no judicial determination that an excess existed at the time of the levy and execution sale. We must hold, therefore, that the execution sale was void and that title did not pass

[4] See cases cited in 32 ALR 1333-1336 (1924).

[5] In Pittsfield Bank. v. Howk et al, 86 Mass 347, 350 (1862) where there was no statutory provision for separating the excess of homestead property held by the homestead claimant, the court provided a procedure in order to "effectuate the purposes of the law, and secure to each of the parties the possession of such portion of the estate as they are respectively legally entitled to hold."

[6] This has been the method of presenting the question in some jurisdictions. Bell Oil & Gas Co. v. Brown et al, 104 Okla 11, 230 P 244 (1924). Cf., Matlock v. Babb, 31 Or 516, 49 P 873 (1897). Usually the burden is imposed upon the creditor to show an excess is available. First Nat. Bank of Garden City v. Tyler, 130 Kan 308, 286 P 400 (1930).

[7] It is not necessary for us to decide whether at this point the grantee would be entitled to a survey to have set off the equivalent of the maximum allowed as a homestead exemption as under ORS 23.270, assuming that it can be set off without destroying its intrinsic value or use.

to plaintiff.[9] However, the abortive execution sale would not have the effect of vitiating plaintiff's judgment and consequently, if the judgment is not invalid upon other grounds, plaintiff may proceed by way of a creditor's bill to establish his interest, if any, in the property.

The evidence concerning the existence of a mortgage debt owed by the Hendrickses to intervenor at the time of the conveyance on April 12, 1957 was confusing and clearly inadequate to establish a mortgagee's interest in the intervenor on the date of the conveyance.

The judgment is affirmed without prejudice to plaintiff to prove and enforce his judgment.

[9] Cf., Black v. Lusk, 69 Ill 70, 75 (1873).