Argued April 3, modified and remanded September 10, petition
for rehearing denied October 9, 1973

SMITH, *Respondent, v.* POPHAM ET AL,
*Appellants.*

513 P2d 1172

*George VanNatta,* St. Helens, argued the cause for appellants. On the brief were VanNatta & Petersen, St. Helens.

*Charles E. Hodges, Jr.,* Portland, argued the cause and filed the brief for respondent.

HOWELL, J.

This is a suit to set aside certain conveyances of real property on the ground the conveyances were made to defraud creditors. A decree was entered in favor of plaintiff, and defendants appeal.

Phillip Popham, an 86-year-old man, lived with his brother Alfred on a 20-acre place owned by Phillip

near Clatskanie in Columbia county. Sixteen acres of the parcel had been acquired by Phillip in 1957 for $4,500. Four acres, which are contiguous to the 16 acres but separated by a very small stream, were purchased by Phillip in 1963 for $225.

On May 5, 1965, Phillip, while driving his uninsured automobile, was involved in a collision with another vehicle. On May 12, 1965, an adjuster for the company insuring the persons injured in the accident called upon Phillip and advised him that a claim was being made against him. Phillip denied liability.

The next day, May 13, Phillip conveyed the four-acre parcel to Alfred for $100. The deed was recorded on the same day.

Approximately two months later, Phillip conveyed the balance of the land to his brother Alfred. The deed was not recorded until May 16, 1966, after the death of Phillip. Apparently there was no monetary consideration paid by Alfred for the conveyance.

Phillip died in September, 1965.

Sometime in 1967 Alfred conveyed the four-acre parcel to his daughter, defendant Alvesta Thompson, as a gift.

In May, 1967, an administratrix was appointed for Phillip's estate. Actions by the parties injured in Phillip's accident were filed against the estate, and judgments in the amount of $18,000 were entered against the estate in May, 1968.

In July, 1970, Alfred sold two acres of the remaining 16 acres for $1,500 to defendant Donald Prouty, who subsequently sold it to Alfred's daughter, defendant Alvesta Thompson, for $3,000 in December, 1971.

The suit herein, which was filed on September 10, 1971, seeks to set aside the two conveyances from Phillip to Alfred and the conveyance of the two acres from Alfred to defendant Prouty in July, 1970, on the grounds the conveyances were made in fraud of creditors.

Defendant Alfred Popham alleged in his answer that the total property was exempt as a homestead. Defendant Alvesta Thompson also alleged that the property was exempt as a homestead and that Donald Prouty, from whom she purchased the two acres in 1971, was a bona fide purchaser of the two acres from Alfred Popham.

The trial court, in deciding for the plaintiff, found:

"1. There was never a valid conveyance by Phillip M. Popham to Alfred Popham of the properties in question, as there was never a valid delivery of the deeds.

"2. Even had there been completed conveyances I find that the conveyances were an attempt to avoid the claims of creditors and therefore voidable.

"3. Phillip Popham never claimed the properties in question as a homestead and that exemption would belong to the estate if there were someone to claim it and there is not (ORS 116.590, now repealed).

"4. The defendant, Donald C. Prouty, purchased the property from Alfred Popham for valuable consideration and without notice of any outstanding claims against the property. Mr. Prouty's subsequent sale to Alvesta Thompson, niece of Phillip Popham and daughter of Alfred Popham, one of the defendants herein, was for a valuable consideration but was with notice of the claims and in fact the sale was because of the present suit."

Defendants Alfred Popham and Alvesta Thompson appeal.

As noted above, the trial court found that the deeds did not operate to transfer title to Alfred because they had not been delivered by Phillip to Alfred. We do not consider the question of whether the conveyances were ineffective to pass title to Alfred for failure of delivery, as that issue was not raised by the pleadings. The plaintiff was not seeking to set aside the conveyances on the grounds of failure of delivery to pass title to the grantee. On the contrary, plaintiff alleged that Phillip conveyed the property to Alfred gratuitously and that the conveyance was made with intent to defraud creditors. The defendants' answer admitted the conveyances, denied they were made in fraud of creditors, and alleged a homestead exemption in the property as an affirmative defense.[1]

We conclude from the pleadings and the transcript that the issues were whether the property was transferred in fraud of creditors and whether a homestead exemption is available under the circumstances.

The defendants contend that in order for plaintiff to prevail it was necessary for her to show that Phillip was indebted to the persons injured in the accident at the time of the conveyances to Alfred.

■■ The law is well established that a voluntary conveyance of property made by a debtor in anticipation of a suit against him is a badge of fraud. 1 Moore on Fraudulent Conveyances 238, § 7 (1908);

---

[1] Ordinarily, if a plaintiff were seeking to set aside a conveyance for nondelivery he would allege that the grantor executed a purported conveyance to the grantee, that there had been no delivery of the deed, and therefore the grantees took nothing by such purported conveyance. Hanns v. Hanns, 246 Or 282, 423 P2d 499 (1967).

37 Am Jur 2d 702, Fraudulent Conveyances § 11 (1968). *See also Evans v. Trude et al.* and *Champlin et al.*, 193 Or 648, 240 P2d 940 (1952). The same rule applies to potential tort actions against the grantor. *Money v. Powell,* 139 So 2d 702 (Fla App 1962); *Watson v. Harris,* 435 SW2d 667, 73 ALR2d 749 (Mo 1968); *Hollins v. Rapid Transit Lines, Inc.,* 430 SW2d 57 (Tex Civ App 1968). *See also Evans v. Trude,* supra at 656. It is the date of the wrongful act and not the filing of the suit or judgment which fixes the rights and status of the parties. *Roddam v. Martin,* 285 Ala 619, 235 So2d 654 (1970).

▮ The trial court found that both conveyances from Phillip to Alfred were made with the intent to defraud creditors. This court has said on several occasions that when the transferor and the transferee are near relatives, the transfer will be carefully scrutinized by the courts. *Jones v. Beers et al.,* 118 Or 317, 246 P 711 (1926); *Evans v. Trude,* supra; *Fernandez v. Zullo,* 95 Adv Sh 842, 263 Or 13, 500 P2d 705 (1972). The various indicia to be considered in determining whether the transfer was intended to defraud creditors are set forth in *Evans v. Trude,* supra. Among the factors are whether the consideration was adequate, whether the transfer was made in anticipation of litigation, whether the conveyance was a transfer of all or only a part of the grantor's property, and whether the grantor retained possession of the premises.

In the instant case Alfred paid $100 to Phillip for the four-acre parcel. The consideration could be deemed adequate as Phillip paid only $225 for the property two years previously; however, the transfer was made the day after the insurance company ad-

juster advised Phillip a claim was being made against him. The transfer of the 16-acre parcel was made for no monetary consideration. The conveyance was made within two months of the notice of the claim, it consisted of all of the grantor's property, and Phillip continued to live on the property. It is true that Phillip was in poor health and that Alfred testified that he had made some payments on Phillip's expenses.

■ Considering all the circumstances, we agree with the trial court that both conveyances were made with intent to avoid the claims of the persons injured in the accident.

The next issue is whether Alfred, the grantee, is entitled to raise the defense of a homestead exemption in this suit to set aside the conveyance.

■ The owner of a homestead exemption may validly transfer the property even though he intended to place the property out of the reach of creditors. *Smith v. Kay,* 153 Or 80, 54 P2d 1160, 55 P2d 794 (1936); *Stewart v. Black,* 143 Or 291, 22 P2d 336 (1933); 37 Am Jur 2d 785, Fraudulent Conveyances § 103 (1968); Lacy, *Homestead Exemption—Oregon Law. A Postscript,* 34 Or L Rev 1, 15 (1954). The rationale for the rule that the property is exempt to the extent of the statutory amount of $7,500 is aptly stated by Professor Lacy in his article, at page 15:

> "It is hornbook law that there can be no fraudulent conveyance of the exempt property because the creditors could not have reached it in any event."

The grantee of a homestead takes the property free of a creditor's judgment unless the homestead owner for some reason, such as abandonment, has lost his homestead exemption. *Fleischhauer v. Bilstad et al, Gray*

*et ux,* 233 Or 578, 379 P2d 880 (1963). The lien of a judgment cannot affect the transfer if the homestead falls within the quantity and value requirements set by the statute. The lien, however, will attach to any quantity and value in excess of the homestead allowance. *Clawson v. Anderson,* 248 Or 347, 350, 434 P2d 462 (1967).

The trial court in the instant case denied any homestead rights to the defendants because Phillip, the grantor, had "failed to claim the properties \* \* \* as a homestead."

ORS 23.270 (1) allows certain persons to claim the homestead exemption before a sale when a levy is made upon a homestead. Subsection (2) of the statute allows a homestead owner, whenever a judgment is recovered against him, to file with the registry of deeds for the county a statement claiming the property as a homestead. However, there is no statutory provision requiring a "claim" to be made before the owner of the homestead transfers the homestead and before a judgment has been docketed or a levy made.

In *Stewart v. Black,* supra, the trustee in bankruptcy filed a suit against the grantors of a homestead seeking to set aside the conveyance for being in fraud of creditors. The conveyance was made while a suit to recover on a note and to foreclose a chattel mortgage was pending. The grantors alleged the homestead exemption as a defense. The trustee conceded that exempt property cannot be reached by creditors on the grounds of a fraudulent transfer, but argued that the exemption was a personal privilege and must be claimed in the manner set forth in ORS 23.270, such as notice before execution sale or filing a claim with the registry of deeds in the county. This court held that

our statute did not provide for a procedure for claiming a homestead before making a conveyance thereof. We stated:

> "It undoubtedly was the intention of the legislature to permit the owner of a homestead to alienate it before judgment and before he had filed with the 'registry of deeds' his declaration of homestead as provided by § 3-204, Oregon Code 1930. By the express provision of the homestead act, the exemption is not impaired by the sale of the property. Moreover, there are no limitations as to when the property may be sold." 143 Or at 296.

In *Clawson v. Anderson,* supra, and *Fleischhauer v. Bilstad,* supra, we held that the title that passes to the grantee of a homestead carries with it the benefit of the homestead exemption. It is true that in both of those cases the grantors had, prior to the conveyance, recorded a notice of claim of homestead exemption. However, the recording of the notice does not appear to be the basis of the decision that the grantee of the homestead receives the benefit of the homestead exemption. A more fundamental reason would be that since the property is exempt in the hands of the grantor and he is free to do with it as he pleases, it is also exempt in the hands of the grantee.

In *Branchfield, Trustee, v. McCulley et al,* 192 Or 270, 231 P2d 771, 235 P2d 334 (1951), the plaintiff trustee in bankruptcy brought suit to set aside a conveyance from the bankrupts to their son for being in fraud of creditors. In their answer the defendant grantors denied that the transfer was intended to defraud creditors. The defendant grantee specifically alleged that the property was exempt as a homestead. In an extensive opinion by Mr. Justice ROSSMAN, it was held that the transfer was invalid because of lack

of delivery of the deed to pass title to the grantee. In a petition for rehearing it was pointed out to the court that delivery had been admitted and was not an issue. The court then addressed the issue of whether the property transferred was exempt as a homestead, which was the primary issue raised in the briefs of the defendant. The court denied the petition for rehearing and defendants' claim for a homestead exemption on the grounds that the grantors had failed to claim the homestead at the time of filing their petition in bankruptcy and had failed to claim the homestead exemption as a defense in the suit to set aside the conveyance. The court held the grantee could not claim the homestead exemption (although he alleged it as defense in his answer) because "[e]xemptions are personal rights and generally can be claimed only by the person entitled to the exemption." 192 Or at 326.

We have examined the original briefs in the *Branchfield* case. It was apparent that the grantors did not believe that it was necessary for them to affirmatively plead the homestead defense and that they did not list the property in the petition in bankruptcy because they had conveyed the property before the petition was filed.

It is not necessary for us to decide in this case whether the defense of a homestead exemption should be affirmatively pleaded or whether it is admissible under a general denial because the defendants affirmatively alleged the defense in their pleadings.[2]

---

[2] As a homestead is completely exempt from the claims of creditors, a conveyance thereof is not in fraud of creditors. It would seem that a denial of the fraudulent transfer would be sufficient to raise the homestead issue. Annot., 154 ALR 913 (1945).

There is some authority to the effect that the grantors of a

(Continued on page 636)

As to the ineligibility of the grantee to raise the defense of a homestead exemption, none of the authorities cited in the *Branchfield* opinion relate specifically to that question. If the title which passes to the grantee carries with it the benefit of the homestead exemption, as we specifically held in *Clawson,* the grantee should be able to protect his property by raising the homestead exemption as a defense in a suit to set aside the conveyance.

■ In the instant case the grantor is deceased. His estate is not in a position to allege the homestead exemption as a defense because the estate is the party seeking to set aside the transfer. We conclude that the defendant grantee is entitled to raise the homestead exemption as a defense. To the extent that *Branchfield, Trustee, v. McCulley,* supra, is contrary to this conclusion, it is overruled.

Although testimony as to value was introduced by both parties, the trial court, apparently relying on our decision in *Shepard & Morse Lbr. Co. v. Clawson,* 259 Or 154, 486 P2d 542 (1971), did not make a determination of the value of the property at the time it was conveyed by Phillip to Alfred. In *Shepard & Morse,* the question was whether the value of the property, and therefore the amount in excess of the exemption, should be determined as of the time of the conveyance, or later when the creditor proceeds to have the property sold at an execution sale. We held that the value should be determined as of the time of the execution sale.

The rationale for that conclusion was that if

(Continued from page 635)

fraudulent conveyance are not indispensable parties to a suit to set aside the conveyance. Bennett v. Minott, 28 Or 339, 344, 39 P 997, 44 P 288 (1896).

the property conveyed had not been homestead property an ordinary judgment creditor could have postponed his levy of execution on the judgment. When the property was finally sold on execution, the amount received at that time would be applied toward satisfaction of the judgment. We said that the same principle should be applied when the property transferred includes homestead property. The opinion stated:

"If the property purchased by plaintiff had not been claimed as a homestead, it would be clear that the judgment creditors could postpone the levy of execution on their judgments and be entitled to have the amount realized at the execution sale applied toward the satisfaction of their judgments; the judgment creditors would not be limited to the value of the property at the time it was transferred by the debtor to his grantee.

"The same principle should be applied when the property transferred is homestead property. The judgment lien should attach to the extent that the value of the land exceeds the statutory amount of the homestead exemption whether that surplus amount existed at the time of the sale by the homestead owner or arose later as a result of an increase in the value of the land.

"If the land had remained in the ownership of the homestead claimant, any increase in the value of the land above the amount of the homestead exemption would be subject to sale on execution to apply on the judgment. There is no reason for any different rule merely because at the time the judgment creditor decides to enforce his judgment lien the land is held by a transferee of the homestead claimant. There is nothing in the language of our homestead exemption statutes which calls for a different result and we have been unable to think of any policy underlying the homestead exemption which would warrant a statutory interpretation limiting the judgment creditor's lien to the value

of the land at the time of the sale by the homestead claimant." 259 Or at 157-58.

■ In *Shepard & Morse* we were discussing a situation where there was an excess of the value of the property over the homestead exemption at the time of the conveyance. In the present case, evidence concerning the value of the property at the time of its conveyance was conflicting, and as previously mentioned, the trial court made no determination of its value at the time of the conveyance. We nevertheless conclude that whether that value was more or less than the homestead exemption when the property was conveyed, the question is the amount by which the value of the property exceeds the exemption at the time it is sold on execution, and it is that amount which may be applied toward satisfaction of the judgment.

Professor Lacy, in another article,[9] takes issue with the dictum contained within the paragraphs just excerpted from *Shepard & Morse,* where we said that a judgment lien should attach to the difference between the property value and the exemption at the time of execution sale whether or not a surplus amount exists at the time of the conveyance by the homestead owner. He contends that rights of the creditor should not attach to any increase in value if at the time of conveyance the value of the property is less than the homestead exemption.

He disagrees with the following conclusions stated in *Shepard & Morse*: that a judgment lien against homestead property should be treated the same as a judgment against non-homestead property,[10] and that

---

[9] Lacy, *Homestead Exemption—Oregon Law: Still More,* 8 Will L J 327 (1972).

[10] Ordinarily a judgment creditor may postpone the levy of

(Continued on page 639)

if the land had remained in the ownership of the homestead claimant any increase in value over the homestead exemption would be subject to sale on execution, and the same rule should apply when the land is held by a grantee of the homestead claimant. He states:

> "If this is meant to apply to a situation where the value of the homestead at the time the debtor conveys out is less than the exemption limit, I submit that it is demonstrably wrong. *Fleischhauer* makes it very clear that a judgment creditor acquires no lien on his debtor's homestead property. Thus 'the same principle' does not apply (as in the case where non-homestead property subject to a lien, is conveyed out and then increases in value) and there *is* a 'reason for any different rule' (than in the case where the debtor remains the owner and the property increases in value beyond the exemption limit and so becomes subject to a lien)." 8 Will L J at 330.

We are not persuaded by Professor Lacy's arguments. As we stated in *Clawson v. Anderson,* supra at 350, transfer of property claimed as a homestead does not destroy the lien of a judgment. Although the homestead exemption also survives that transfer, there is no reason why an increase in value over that exemption in the hands of a purchaser should not fall subject to the lien. The only reason for immunizing the increase in value from the lien is to facilitate the alienability of the property and to ensure that the purchaser will not compel the debtor to pay some or all of the $7,500 in exempt proceeds from the sale to the judgment creditor. However, this reasoning is equally ap-

---

(Continued from page 638)

execution and be entitled to the value of the property at the time of the execution sale. Under ORS 18.360 a judgment remains valid up to 20 years.

plicable to situations where the value of the property exceeds the homestead exemption at the time of sale, a situation in which, as Professor Lacy concedes, the judgment creditor may reach the entire excess over $7,500 at the time he levies execution.

Since a judgment creditor could reach any increase in value over the homestead exemption if the property had remained in the hands of the debtor, immunization of an increase in value over the homestead exemption occurring after conveyance of the property is necessarily at the expense of creditors' rights. We find nothing in the homestead statutes which indicates that creditors' rights should be so compromised, or that alienability of the homestead property should be facilitated to any greater extent than allowing the purchaser to acquire $7,500 of the property value free of any judgment lien. It should be noted in this regard that exempt proceeds from the sale of homestead property in the hands of the debtor can be affected only if, at the time of the conveyance, the judgment lien is greater than the difference between the value of the property and the homestead exemption. If the lien is less than that difference, then the purchaser may extinguish the lien by paying the appropriate portion of the difference to the judgment creditor, and the debtor's $7,500 in exempt proceeds will not be affected.

It may well be that the homestead statutes are in need of legislative revision. Indeed, it may be that both homestead debtors and nonhomestead debtors should, if they wish to sell their property, be able to compel creditors to execute their judgments at that time. In this way debtors' incentive to begin anew and become producing members of society would be

fostered. This, however, is a matter for legislative consideration.

■ The question of whether the value of the property at the time of an execution sale exceeds the homestead exemption and, if so, the amount of the excess, may be determined by the use of a creditor's bill. *Clawson v. Anderson,* supra, and *Shepard & Morse v. Clawson,* supra.

■ As we have previously mentioned, Alfred sold two acres of the 16-acre parcel to the defendant Donald Prouty for $1,500 in July, 1970. Later, Prouty sold the two acres to Alfred's daughter, defendant Alvesta Thompson. The record clearly establishes— and apparently plaintiff does not disagree—that Prouty was a bona fide purchaser for value of the two-acre parcel. It is also clear that Alvesta Thompson, the purchaser from Prouty, was not a bona fide purchaser as she had knowledge of the claim. However, as long as Prouty was a bona fide purchaser without notice, his protection extends to his grantee, and she succeeds to all the rights of her grantor. 5 Tiffany, Law of Real Property (3d ed) 128, 129, § 1328 (1939); 3 Pomeroy, Equity Jurisprudence (5th ed) 57, § 754a (1941). *See also Hall v. Risley and Heikkila,* 188 Or 69, 213 P2d 818 (1950).

Under these circumstances the two-acre parcel now held by defendant Alvesta Thompson is immune from the judgments secured by the plaintiffs in the personal injury action, and plaintiff is not entitled to set aside the conveyance to Prouty or the conveyance from Prouty to defendant Alvesta Thompson.

■ While the Prouty property is immune from the rights of the creditors and may not be sold on any execution sale brought by the judgment creditors, the

$1,500 paid for it by Prouty to Alfred Popham must be considered in determining the amount of the homestead exemption remaining in favor of Alfred at the time of an execution sale. Alfred is entitled to an exemption in the property or the proceeds to the extent of $7,500. Therefore, if the creditors choose to levy execution on the property now in Alfred's possession, Alfred would be entitled to $6,000 ($7,500 less $1,500) of the proceeds of the sale.

Modified and remanded with directions to enter a decree in accordance with this opinion.[5]

---

[5] We note that the decree entered by the trial court required the defendant Alfred Popham to vacate the premises within 30 days. The plaintiff is not entitled to possession of the premises and Alfred is entitled to possession until an execution sale is consummated, and then only if the proceeds exceed the sum of $7,500 less the $1,500 already received by Alfred from his sale to Prouty.