**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John P. BERTIE, as Trustee, et al.,
Defendants-Appellants.**

**No. 74–1846.**

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1976.

Monte B. Carlson (argued), of Webb, Pike, Burton & Carlson, Twin Falls, Idaho, for defendants-appellants.

Paul L. Westberg, Asst. U. S. Atty. (argued), Boise, Idaho, for plaintiff-appellee.

## OPINION

Before HUFSTEDLER and KENNEDY, Circuit Judges, and SWEIGERT,[*] District Judge.

ANTHONY M. KENNEDY, Circuit Judge:

The United States, for its agency the Small Business Administration, brought suit in the District of Idaho to enforce the provisions of a loan guarantee agreement and to set aside as fraudulent certain conveyances of real property. The district court gave judgment for the plaintiff and the defendants appeal. We affirm.

In 1964 Bertie's Poultry Farms, Inc., then a family-owned corporation, took a bank loan of $250,000 secured by the corporation's assets. Its officers and shareholders and a second corporation signed an agreement of guarantee for the full amount of the loan.[1] The note and the agreement were subsequently assigned to the SBA. The guarantors were John and Luella Bertie (husband and wife), Cecelia Bertie, and Apple Valley Farms, Inc. All were named as defendants below.

The original corporate debtor, Bertie's Poultry Farms, Inc., transferred its assets and liabilities to Northwestern Poultry Growers, Inc. Northwestern defaulted on the loan in November 1971. By 1972 the principal indebtedness was $170,000, plus additional sums for accrued interest.

Northwestern Poultry filed a bankruptcy petition. The court-appointed trustee conducted a sale of the corporation's assets in May 1972. The SBA made the successful bid, and the price, after deducting certain expenses, was credited against the amount due on the note. The net credit was for $40,853.50. The SBA then brought this action against the guarantors for the remaining balance.

### A. *SBA's Purchase of the Collateral*

■ The defendants, both in the trial court and on appeal, contended the SBA acted in breach of a duty to the guarantors because its bid at the trustee sale was less than "a commercially reasonable" amount. The trial court ruled this was not a defense in the action brought upon the guarantee. We agree.

The terms of the agreement imposed no duty on the SBA with reference to the collateral. Indeed, the agreement permitted the SBA to release the collateral entirely without consent of the guarantors. Therefore, we find the SBA did not act in breach of any obligation that it had to the guarantors. *Accord United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d 673, 677 (10th Cir. 1964); *United States v. Dubrin,* 373 F.Supp. 1123, 1126 (W.D.Tex.1974). *See also United States v. Shirman,* 41 F.R.D. 368, 371–73 (N.D.Ill.1966).

In any event it would be most difficult to impose a duty upon the plaintiff on these facts since the sale was conducted by the bankruptcy trustee and approved by the bankruptcy court, and plaintiff acted only as a bidder. Moreover, defendants can claim no prejudice since they had notice of the sale and therefore had an opportunity to foreclose on the property themselves by paying the debt, *see Austad v. United States,* 386 F.2d 147, 151 n. 1 (9th Cir. 1967), or alternatively, of bidding for the property at the trustee's sale, thereby preserving their option to dispose of it on the commercial market.

Accordingly, the trial court correctly ruled that the debtor was liable to the SBA for the remaining amounts owing on the debt.[2]

---

* Honorable William T. Sweigert, United States District Judge, Northern District of California, sitting by designation.

1. All documents, including the guarantees, were on SBA forms.

2. Appellants' subsidiary contention that the district court erred by refusing to examine the amounts deducted by the trustee as costs of disposing of the collateral is equally without merit since any deficiency on the part of the trustee cannot be imputed to the SBA.

## B. *Fraudulent Conveyances*

██ We find no merit in appellants' contention that the district court erred in setting aside, as fraudulent, conveyances of two parcels of real property by Mr. and Mrs. Bertie to Mr. Bertie as trustee for their minor children. We need not rule on the propriety of the district court's determination that the conveyances were fraudulent under section 55–913 (which defines as fraudulent those transfers made without fair consideration during insolvency or resulting in insolvency), for we hold that the district court correctly held the transaction fraudulent under section 55–916. This provides an adequate basis for sustaining the judgment.

Section 55–916 of the Idaho Code makes fraudulent those conveyances made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." Section 55–908 provides that "the question of fraudulent intent is one of fact, and not of law." If the district court properly found that the appellants made the transfers with actual intent to defraud creditors, the judgment setting aside the conveyance was not only proper, but mandated by Idaho law. Idaho Code § 55–906. Our review here is limited to determining whether sufficient evidence existed on the record to warrant the district court's finding that "the Berties, by these conveyances, were attempting to place the real properties in question beyond the reach of their creditors and, in particular, the plaintiff."

The Idaho Supreme Court, in interpreting section 55–916 has held that certain indices of fraud may warrant an inference of actual fraud.[3] *Mohar v. McLelland Lumber Co.,* 95 Idaho 38, 42, 501 P.2d 722, 726 (1972). The district court here properly found the existence of the following well recognized indices of fraud:

(1) The transfers were made without consideration. *Chester B. Brown Co. v. Goff,* 89 Idaho 170, 176, 403 P.2d 855, 858 (1965); *Royal Indemnity Co. v. McClendon,* 64 N.M. 46, 48, 323 P.2d 1090, 1091 (1958); *see Ebey-McCauley Co. v. Smith,* 353 P.2d 23, 27–28 (Okl.1960).

(2) The relationship between the transferors and the beneficiaries of the transferee trust was that of parents and children. *Burrows v. Jorgensen,* 158 Cal. App.2d 644, 648, 323 P.2d 150, 153 (1958); *Menick v. Goldy,* 131 Cal.App.2d 542, 547, 280 P.2d 844, 847 (1955); *see Smith v. Popham,* 266 Or. 625, 631, 513 P.2d 1172, 1175 (1973).

(3) The transferors were heavily indebted at the time of the transfers. *Royal Indemnity Co. v. McClendon, supra,* 64 N.M. at 48, 323 P.2d at 1091; *see Payne v. Gilmore,* 382 P.2d 140, 144 (Okl. 1963).

(4) Lawsuits were imminent by creditors, and in particular by the plaintiff.[4] *Smith v. Popham, supra,* 266 Or. at 631, 513 P.2d at 1175; *Payne v. Gilmore, supra,* 382 P.2d at 140.

(5) John Bertie, one of the transferors, as trustee of the transferee trust continued to have possession and control over the property and did not maintain separate books or records for the trust, and never made an accounting to the beneficiaries of the trust. *See Smith v. Popham, supra,* 266 Or. at 631, 513 P.2d at 1175; *Royal Indemnity Co. v. McClen-*

---

3. Courts have recognized that direct proof of fraudulent intent is so peculiarly within the control of those sought to be charged with fraud that it is proper, and usually necessary, to show the inferences of fraudulent intent from the circumstances surrounding the transaction. *Menick v. Goldy,* 131 Cal.App.2d 542, 548, 280 P.2d 844, 848 (1955); *Burns v. Radoicich,* 77 Cal.App.2d 697, 702, 176 P.2d 77, 80–81 (1947).

4. There is a dispute over when the transfers occurred. Appellants argue the transfers were some months before default by Northwestern Poultry. But the transfers were recorded in December, 1971, after default and when liability on the guarantee contract was imminent. The date of transfer was a question of fact, and the trial court's finding that it occurred in December, 1971, is supported by substantial evidence.

*don, supra,* 64 N.M. at 48, 323 P.2d at 1091.

The record supports these factual findings, and the district court was warranted in drawing the inference from these facts that the transfer was made with fraudulent intent.[5]

We therefore affirm the judgment of the district court.

---

5. Whereas the existence of even one of the above circumstances may warrant an inference of fraudulent intent, the inference is particularly strong where the existence of several such indices coincides. *See Chester B. Brown Co. v. Goff,* 89 Idaho 170, 176, 403 P.2d 855, 858 (1965); *Payne v. Gilmore,* 382 P.2d 140, 143 (Okl.1963).