Submitted on record and briefs January 23, affirmed April 17, 1978

STATE ex rel NILSEN, *Appellant,*
*v.*
JONES et al, *Respondents.*
(No. 30242, CA 7607)
577 P2d 541

James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, Al J. Laue, Assistant Attorney General, and Kathleen Dahlin, Certified Law Student, Salem, filed the brief for appellant.

[ 581 ]

Derrick E. McGavic, J. P. Graff, and Gildea & McGavic, P.C., Eugene, filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiff judgment creditor appeals from a final order entered in proceedings taken pursuant to ORS 23.280 discharging plaintiff's judgment lien against defendants' real property.[1]

On July 17, 1970, plaintiff obtained a judgment against defendants, Daniel and Claudine Jones, "and each of them," for $4,182.65 plus costs, which judgment was duly entered in the judgment docket of Lincoln County where defendants owned a home as tenants by the entirety. In 1973, Daniel Jones filed a voluntary petition in bankruptcy in which he listed plaintiff's judgment among the secured claims against him. As an asset, he listed the home property, valued at $25,000, showing an equity of $5174, for which he claimed exemption as a homestead. The exemption was allowed, and on January 18, 1974, he received a discharge in bankruptcy.

Daniel and Claudine dissolved their marriage in August, 1974, as a result of which they became tenants in common of the real property in Lincoln County. Claudine and the couple's two children, for whom Daniel pays support, continued to reside at the property. Daniel resided elsewhere.

In January, 1976, defendants entered into an agreement to sell the property for $32,000, with the purchaser assuming the first mortgage in the approximate amount of $18,000. Defendants' costs of sale were $2,468. In early March, 1976, defendants commenced these proceedings pursuant to ORS 23.280[2] by

---

[1] The proceedings also sought and obtained satisfaction of the judgment against defendant Daniel Jones under ORS 18.420. That part of the proceedings is not involved in this appeal.

[2] ORS 23.280 provides:

"(1) At any time after the date of execution of an agreement to transfer the ownership of property in which a homestead exemption is claimed pursuant to ORS 23.240, the homestead claimant or his transferee may give notice of intent to effect discharge from the

filing in the original proceedings in which the judgment in question was entered a notice of intent to effect discharge from a judgment lien, an application for a certificate of annulment of lien, an application for an order that property is no longer subject to a judgment lien, and a motion for an order requiring plaintiff to show cause why judgment should not be discharged. Pursuant to ORS 23.290, plaintiff filed objections to defendants' motions and applications. At the time plaintiff's judgment was entered and of Daniel's bankruptcy, the homestead exemption was $7500; at the time this proceeding was commenced it was $12,000. (Oregon Laws 1975, ch 208, § 5, effective September, 1975.)

judgment lien to any owner of the judgment docketed against the homestead claimant in the county in which the property is situated. Each notice shall be styled as a paper in the action in which the judgment was recovered and shall:

"(a) Identify the property and the judgment and state that the judgment debtor is about to transfer, or has transferred, the property and that the transfer is intended to discharge the property from any lien lawfully arising out of the judgment;

"(b) State the fair market value of the property on the date of the notice and list the encumbrances against the property, including the nature and date of each encumbrance, the name of the encumbrancer and the amount presently secured by each encumbrance;

"(c) State that the property is claimed by the person giving the notice to be wholly exempt from the lien of the judgment or, if the value of the property exceeds the sum of the encumbrances specified as required under paragraph (b) of this subsection that are senior to the judgment lien and $12,000, that the amount of the excess or the amount due on the judgment, whichever is less, will be deposited with the clerk of the court in which the judgment is docketed for the use of the judgment holder; and

"(d) Advise the holder of the judgment that the property may be discharged from any lien arising from the judgment, without further notice to the holder of the judgment, unless prior to a specified date, which in no case may be earlier than 14 days after the date of mailing of the notice, the judgment owner files objections and a request for a hearing on the matter as provided in ORS 23.290.

"(2) Each notice described by subsection (1) of this section shall be sent by certified mail to the present holder of the judgment, as shown by the judgment lien docket, at his present or last-known address according to the best knowledge of the person sending the notice. A

[ 584 ]

Prior to the 1975 amendments to the homestead laws,[3] plaintiff's judgment was a lien against defendants' real property, ORS 18.350(1), even though their equity therein did not exceed the homestead exemption—the lien remained in limbo and attached to any value of the property in excess of the exemption at the time of levy of execution, even though the property was then owned by a purchaser of the debtor or the debtor had been previously discharged in bankruptcy.[4] However, the excess could not be reached until there was a judicial determination that there was an excess, and there was no statutory procedure to make such a determination except as an incident to the creditor's voluntary levy of execution.[5] ORS 23.270. The creditor could bide his time in hopes that the value of the property and the "leviable interest" would increase.

In 1975, the legislature addressed these problems by enacting ORS 23.280-23.300, under which these proceedings were initiated, and by adding subsection (4) to ORS 23.240. ORS 23.280 permits the *debtor* or his transferee to have a judicial determination of the leviable interest in the homestead at any time after signing an agreement to transfer the property, and provides for determining the value of the property at the time the proceedings are initiated. ORS 23.280(1)(b). The procedure might be characterized as an "inverse execution" in that the creditor is forced to

copy of each notice, together with proof of mailing, may be filed with the clerk of the court with whom the judgment is docketed and shall be filed by the clerk with the records and files of the action in which the judgment was recovered."

[3] Oregon Laws 1975, ch 208, § 5; ch 742.

[4] The only effect of a discharge in bankruptcy was to eliminate the debtor's personal liability for the debt. *Everett v. Papé Bros., Inc.,* 269 Or 575, 525 P2d 996 (1974).

[5] *Semble: Clawson v. Anderson,* 248 Or 347, 434 P2d 462 (1967); *Shepard & Morse Lbr. Co. v. Clawson,* 259 Or 154, 486 P2d 542 (1971); *Smith v. Popham,* 266 Or 625, 513 P2d 1172 (1973); *Everett v. Papé Bros., Inc., supra.*

assert and enforce his judgment lien, or lose it with respect to that homestead property of the debtor. It has the salutary effect of permitting the transferee to take the property free of the judgment lien.

While the parties make many contentions, the sole question is whether the plaintiff may reach any portion of the $14,000 of the sales price remaining after deducting the balance due on the mortgage. If the applicable exemption is $12,000, and if the costs of sale may be deducted from the $14,000 to determine the proceeds of sale to which the exemption extends, ORS 23.240(2), plaintiff may not prevail.

■ After the order was entered herein, the Supreme Court held in *Wilkinson v. Carpenter,* 277 Or 557, 561 P2d 607 (1977), that the value of the homestead exemption is determined at the time of the sale on execution rather than at the time the judgment was entered. While *Wilkinson* involved an execution sale, the procedure under ORS 23.280 is, as we noted above, akin to an "inverse execution"—a procedure to force the creditor into a determination of the leviable interest in excess of the homestead exemption, or to forever hold his peace with respect to a lien claim against that property. The analogy is sufficiently close to permit application of the *Wilkinson* rule to these proceedings.

■ ORS 23.240(2) provides the formula for determining the extent of the exemption:

> "The exemption shall extend to the proceeds derived from such sale to an amount not exceeding $12,000 * * *."

The phrase, "the proceeds derived from such sale," means the amount actually realized by the seller after deducting necessary and reasonable costs of sale. Plaintiff does not contend that the costs of sale were unnecessary or unreasonable.

Plaintiff does contend, however, that because ORS 23.280(1)(c)[6] does not expressly permit the debtor to deduct such sums from the fair market value (agreed here to be the purchase price) in determining the amount to be deposited for the use of the judgment holder, the debtor may not assert any claim to the funds so desposited. *See* ORS 23.300(2).[7] We need not decide that question, however, because the funds deposited with the clerk in these proceedings were deposited pursuant to a court order, after hearing, and not pursuant to ORS 23.280(1)(c). The effect of the order was to permit the sale of the property free of the lien and to substitute a sum of money for the property, there being agreement as to the maximum amount plaintiff could reach. No objection was made to that procedure; instead, each party submitted briefs based upon the court's findings of fact, setting forth their contentions as to the legal conclusions to be drawn therefrom. In this posture of the proceedings, we conclude that both parties are entitled to assert any and all of their reasons why each is entitled to the funds on deposit.

We need not, and do not decide whether ORS 23.240(4)[8] applies retroactively to pre-existing judg-

[6]No contention is made that the application of ORS 23.280 to this proceeding violates any rights of the plaintiff judgment creditor, even though it requires the creditor to accept the value of the property as of the date the proceedings are initiated rather than biding his time until the debtor's equity has increased by inflation, improvements, or otherwise. We note, however, that the rationale of the statute is the same as that of the Supreme Court in *Shepard & Morse Lbr. Co. v. Clawson, supra,* where the court held that the value of the property must be determined as of the date the quiet title suit was commenced by the transferee.

[7]ORS 23.300(2) provides:

"The holder of any judgment described in subsection (1) of ORS 23.280 is entitled to receive the full amount of any deposit made with respect to the judgment upon delivery to the clerk of the court of a certificate of annulment of the lien, prepared as provided in subsection (2) of ORS 18.400 and specifying that the property described in the notice is released from the judgment lien."

[8]ORS 23.240(4) provides:

"When the owner of a homestead has been adjudicated bankrupt or has conveyed the homestead property, the value thereof, for the

ments where one of two tenants by the entireties, both of whom are the debtors thereunder, files a petition in bankruptcy. Even if it were applicable here, the result would be the same because Daniel's interest in the property would be free of the judgment lien and he would be discharged from liability; Claudine would be the sole judgment debtor and her homestead exemption would exceed the value of her interest in the property. If the statute is inapplicable, the $12,000 exemption available to Daniel and Claudine is sufficient to shield the "proceeds derived from the sale."

Since the $12,000 exemption, plus the costs of sale, exceed the defendants' equity in the property, all of the proceeds of sale are exempt from the lien of the judgment.

Affirmed.

---

purpose of determining a leviable interest in excess of the homestead exemption, shall be the value on the date of the petition in bankruptcy, or on the date the conveyance becomes effective, whichever shall first occur."