UNITED STATES of America, Plaintiff,

v.

Eddie L. MAY, et al., Defendants.

Civ. No. 83–0214–E.

United States District Court,
S.D. California.

Oct. 31, 1984.

Nancy Morgan, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

A. Lee Estep, San Diego, Cal., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

This is an action by the United States to recover tax deficiencies owed for the years 1969 and 1970 by defendants Eddie L. May and his former wife, Margarita Woolf.

In a Memorandum Decision dated June 20, 1984, this court granted summary judgment in the government's favor on several claims. The court held that the United States is entitled to judgment against Eddie May in the amount of $105,289.01 as a result of tax deficiencies. Margarita Woolf was held to owe $52,257.98, plus interest, on her tax deficiencies. In light of these deficiencies, the United States was held to possess tax liens on all property owned by May and Woolf. Finally, as to the property known as "Hidden Glen Ranch," conveyed by Eddie May to his second wife, Efigenia May, the court held that the conveyance was fraudulent and should be set aside. The court permitted the foreclosure of the tax lien on the ranch property and ordered that if the proceeds of the sale of the ranch were insufficient to satisfy May's liability, the United States was entitled to a deficiency judgment against him.

At present, the court has before it an attempt by the United States to satisfy Margarita Woolf's tax liability out of property formerly owned by Woolf, located at 3705 Fairmount Avenue, San Diego, California, and conveyed to Woolf's half brother, J. deJesus Munoz. The government moves for summary judgment in its favor setting aside the transfer of that property as fraudulent, foreclosing Woolf's interest in that property by judicial sale, and granting the United States a deficiency judgment in the event the proceeds from the

sale of the property are insufficient to satisfy Woolf's obligation to the government.

## FACTS

The facts relating to the transfer of the Fairmount property from Woolf to Munoz are as follows. The property was originally purchased in 1977 by Margarita Woolf and J. deJesus Munoz as tenants in common. After an assessment in 1977 by the Secretary of the Treasury for the deficiency on her 1969 federal income tax return, Margarita Woolf stipulated through counsel to a determination of tax deficiency in the amount of $38,083.18 in the United States Tax Court. This amount was never paid, however, and, as noted, this court has recently held that Woolf owes $52,257.98 to the United States.

Margarita Woolf transferred her interest in the property to her half brother and co-owner on February 8, 1979, seven days after she stipulated to the deficiency in the tax court. The transfer was accomplished by quitclaim deed and the deed recited that the transfer was for no consideration.

Despite the language of the deed, however, there is some confusion as to the consideration for the transfer. Neither Woolf nor her half brother appear certain as to what the consideration was, if anything. Early in her deposition, Woolf states that there was no consideration for the transfer. Later, she indicates that the property may have been transferred in exchange for forgiveness of all her prior debts to her brother, unspecified in amount. Still later, Woolf states that she had received a $5,000 loan from Munoz which he forgave as consideration, but that that was the only debt forgiven. Finally, on her 1979 tax return Woolf states that she received $23,800 for the sale of her share of the property to Munoz.

The following exchange is indicative of the ambiguity surrounding the transaction:

Q. So you just received that $5,000. Was there any other cancellation of indebtedness? I mean, the other money that you owed your brother, did he cancel that indebtedness?

A. We have adjusted as we go along, because he did help me and he has sent me money. Whenever I need it, he sent me money.

Q. But you don't have any more cash. You never received any more money on the sale of the Fairmount Street?

A. Not on that property, no.

(Questioning of Ms. Woolf by Ms. Nancy Morgan, Tax Division, United States Department of Justice).

In his deposition, Woolf's half brother Munoz testified that he paid Woolf for the Fairmount property. He testified that the payment he made to her was in the form of bank drafts and cash. He stated in his deposition that he could not remember the exact amount, however:

Q. And not to repeat, how much did you pay her?

A. Exactly, I would not be able to say.

Q. $10,000?

A. No. She can give you more exact amount than I can.

Q. I'm just asking for your recollection. Is it $20,000, can you approximate?

A. No. No, I can't give you an exact amount.

(Deposition questioning of Mr. Munoz by Ms. Karen Stifter, Tax Division, United States Department of Justice).

At the time of the transfer from Woolf to May, both deponents indicate that the fair market value of the property was $40,000. Munoz added roughly $20,000 in improvements to the property during this period.

## DISCUSSION

It is this court's conclusion that the government's motion for summary judgment should be granted.

■ California has adopted the Uniform Fraudulent Conveyances Act, Cal.Civ.Code §§ 3439 to 3439.12 (West 1970). Under Section 3439.04 of the California Civil Code, a conveyance made by

a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration.

As is evident from the statutory language itself, no intent to defraud creditors by way of the transfer need be shown under this section. *Headen v. Miller,* 141 Cal.App.3d 169, 172, 190 Cal.Rptr. 198 (1983).

■ Under this section, the conveyance of the Fairmount Avenue property from Woolf to Munoz must be set aside as fraudulent. After the conveyance of her interest in the property, Woolf had no assets and an indebtedness of $35,000, according to her deposition testimony. The conveyance thus rendered Woolf insolvent. Cal. Civ.Code § 3439.02(a) (West 1970); *Tri-Continental Leasing Corp., Inc. v. Zimmerman,* 485 F.Supp. 495, 498 (N.D.Cal. 1980).

Further, while there is some uncertainty as to the consideration Woolf received for the property, it is this court's view that there was no fair consideration as it is defined in the Act, Cal.Civ.Code § 3439.03 (West 1970), as a matter of law.

■ Fairness of the consideration received is to be viewed from the creditor's perspective. *Patterson v. Missler,* 238 Cal. App.2d 759, 766, 48 Cal.Rptr. 215 (1965). Woolf has testified, and the deed supports this testimony, that she received no consideration for the transfer. Alternatively, she has testified that she received $5,000 in the form of debt forgiveness from her half brother. Her tax return for the year in question would suggest that she received $23,800, but there is no supporting evidence in her testimony that she received that amount, nor can her brother remember paying that sum to her for the property. There is some suggestion that the transfer was in exchange for a cancellation of past indebtedness to Munoz accumulated over the years 1970 to 1979 and amounting to in excess of $56,000.

This "consideration" is discovered for the first time in Woolf's response to the present motion, however: She never referred to the cancellation of indebtedness in this amount as consideration in her deposition testimony and even asserted that $5,000 debt to Munoz that was also allegedly cancelled in exchange for the property was the only debt forgiven in exchange for the transfer.

■ Summary judgment is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). But the fact that there is confusion in defendants' own minds about the consideration for the transfer does not preclude summary judgment in the present case; a party cannot create a genuine issue of fact by contradicting his own testimony. *Mesirow v. Pepperidge Farm, Inc.,* 703 F.2d 339, 344 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983); *Lopez v. General Motors Corp.,* 697 F.2d 1328, 1333 (9th Cir.1983).

Thus, the evidence before the court establishes that the conveyance from Woolf to Munoz was fraudulent under Section 3439.03 and should be set aside. In addition, this conveyance is also fraudulent under Section 3439.04 of the California Civil Code which provides that conveyances made with actual intent to defraud present and future creditors are void as to such creditors.

As discussed in the earlier Memorandum Decision in this case, proof of actual intent to defraud is difficult to obtain, therefore proof of such intent is generally made through circumstantial evidence. *United States v. Bertie,* 529 F.2d 506, 508 (9th Cir.1976).

Certain "badges of fraud" are viewed as particularly indicative of fraudulent intent. The numerous badges of fraud in the instant transaction lead this court to conclude that the transfer was made with fraudulent intent. In so holding, the court looks to

1) the close personal relationship between the transferor Woolf and the transferee Munoz,

2) the fact that Woolf was rendered insolvent by the transaction,

3) the inadequacy of the consideration, if any,

4) the lack of documentation of the alleged loans, and

5) the fact that the lawsuit was imminent at the time of transfer.

*Bertie*, 529 F.2d at 509, n. 5. In addition, it is worth noting that Woolf continued to reside on the property with her daughter after the alleged transfer, paying only nominal rent and receiving full support from Munoz. This, too, is a badge of fraud. *Id.* at 509.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing, and for the reasons set forth herein, the court grants plaintiff's motion for summary judgment.