TE'O MANUMA, for himself and as representative of RYAN MANUMA, Plaintiff

v.

CONTINENTAL INSURANCE CO., ANITA TEDROW, and SCHWALGER, JR., Defendants

High Court of American Samoa
Trial Division

CA No. 59-83

December 18, 1987

135

Before REES, Chief Justice, VAIVAO, Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Asaua Fuimaono
         For Defendant, William Reardon

On motion to invalidate deed:

In 1984 plaintiff Te'o Manuma obtained a judgment for $90,000 against defendant Anita Tedrow for the wrongful death of Te'o's son. The judgment was upheld on appeal. Since that time Te'o has tried without success to satisfy the judgment. He now asserts a right to the proceeds from the sale of a tract of land and attached house allegedly owned by Mrs. Tedrow.

In April of 1981 Afatasi Burke agreed to buy this tract of land from the trustee for Douglas Craddick. In August 1983 Afatasi Burke assigned her interest in that agreement to Mrs. Tedrow. The judgment against Mrs. Tedrow arose after that assignment. The payments due the Craddick trust under the agreement were paid by Mrs. Tedrow's husband, who also constructed on the land a house which has been used as the Tedrows' family dwelling. In September 1986 Mr. Tedrow completed

137

the payments due under the assignment to Mrs. Tedrow and the Craddick trust conveyed a deed of title. Rather than draw the deed in the name of Anita Tedrow as set out in the land sale contract and subsequent assignment, however, the seller conveyed the land to the Tedrows' minor children. An agreement has since been reached for resale of the land, along with the house, to an unrelated party.

Plaintiff asks that the conveyance to the children be set aside as a fraudulent one designed to defeat his rights as a creditor of Mrs. Tedrow. We believe plaintiff's contention to be well founded.

Courts have a duty to scrutinize closely intra-family transfers of property that hinder creditors of the transferring individual. See Flesher v. Carter, 467 S.W.2d 276, 279 (Mo. App. 1971). Such scrutiny should include consideration of whether the transaction was attended by certain "badges of fraud": indebtedness of the transferor, lack of consideration for the transfer, a close family relationship between the parties to the transfer, the pendency or threat of litigation, reduction or depletion of the transferor's estate, and retention of the transferred property by whoever possessed it before the transfer. Smith v. Popham, 513 P.2d 1172, 1175 (Or. 1973); see generally 37 Am. Jur. 2d, Fraudulent Conveyances §§ 10-14. The transfer of legal title of this land to the Tedrow children was festooned with such badges.

When Afatasi Burke assigned her rights under the land sale contract to Anita Tedrow, Mrs. Tedrow became the "Buyer" under the contract and acquired equitable title to the property. Though the seller retained legal title, it held such title only as trustee for the purchaser. Mrs. Tedrow alone held the ownership interest in the property and the benefits of the land sale agreement. See Fellmer v. Gruber, 261 N.W.2d 173, 174 (Iowa 1978); 77 Am. Jur. 2d, Vendor & Purchaser §§ 317, 319. Her status as equitable titleholder existed at the time the High Court rendered judgment against her in 1984.

The record teems with evidence that Mrs. Tedrow had legal title placed in her children's names in 1986 solely in order to avoid leaving the property vulnerable to her judgment creditor. A

sizeable judgment had been entered against Mrs. Tedrow while she held equitable title to the property. Upon full payment, entitling her to legal title, she gave the property to her children for no consideration. She apparently has no other significant assets with which to satisfy the judgment, and she has tenaciously resisted plaintiff's previous efforts to collect anything from her. The transfer of title to the children was not accompanied by any change in possession of the property. We conclude that it was designed solely to avoid satisfaction of the judgment and should therefore be set aside.

Defendant contends, however, that even if she did own the land its proceeds cannot be seized because they are subject to a "homestead exemption." The authority cited for this proposition, however, applies only where such an exemption is provided by statute. A homestead exemption can exist only if created by the legislature. In re Doody's Estate, 210 Or. 658, 313 P.2d 444 (1957). The Fono has not enacted such a law.

Defendant argues that A.S.C.A. § 43.1528(a), which provides that "[n]o real property of a Samoan may be subject to sale under a writ of a court to satisfy any judgment," is the local equivalent of a homestead exemption and should be construed to exempt from seizure not only real property but also proceeds derived from the sale of such property. We decline, however, to read into the statute a broad new meaning apparently uncontemplated by the Fono. Homestead exemption statutes in the United States and the land exemption in American Samoa are different kinds of laws enacted for broadly similar but far from identical purposes. The former, which typically exempt from seizure a specified dollar amount of the value of a single residence, protect the interest of an individual and his family in having a place to live and a modicum of financial stability. See Walker v. Hayes, 248 Ala. 472, 28 So. 2d 413, 415 (1946). A.S.C.A. § 43.1528, on the other hand, was enacted to buttress the protection of the traditional Samoan land ownership system that underlay the Treaties of Cession. In the United States a creditor can seize all of a debtor's land with the single exception of a modest family residence, and this very limited exemption has become a kind of property that is in some circumstances transferable. A Samoan, on the other

139

hand, is given the right to keep all of his land for as long as he wishes no matter how many bad debts he has; the underlying principle is that Samoans should be discouraged from alienating their land under any circumstances whatever. Once a Samoan has voluntarily alienated his land and converted it into cash he has placed himself outside the letter of the statutory exemption and also beyond its rationale. Estopped to invoke the public policy that Samoans should not part with their land, he is then governed by the more general principle that people should pay their debts.

There is, however, another layer of equity beneath the "legal ownership" and the "equitable ownership" of the Tedrow land. Mr. Tedrow, the wage earner of the Tedrow family and a person against whom plaintiff has no judgment, actually made the payments on the land. He also paid for the house which, in the absence of a separation agreement, the law regards as a part of the land. Speaking equitably rather than in terms of legal title, Mr. Tedrow earned these wages and made these payments on behalf of his family unit. As is common with families in which only one spouse is Samoan, the Tedrows originally planned to place the land in the name of Mrs. Tedrow in order to avoid the restrictions on ownership of land by non-Samoans. If plaintiff had invoked some strictly legal right rather than a remedy that is within the Court's equitable powers, we might be forced to conclude that it was simply the Tedrows' bad luck that they had chosen to place title to the land in the name of the spouse who happened later to become a judgment debtor. It is within our discretion, however, to mitigate what would otherwise be the harsh effects of an equitable remedy such as setting aside a fraudulent conveyance.

Accordingly, we set aside this conveyance on condition that plaintiff receive only half the proceeds of the resale. This will allow the Tedrows, a family with two adult members only one of whom is a judgment debtor, to retain half the benefits of a series of transactions in which the interests and efforts of both were thoroughly involved.[1]

---

[1] Contrary to a suggestion made by defendants' counsel, this solution has nothing to do with "dower rights" or with a judgment

Finally, we note with some apprehension the receipt of a "special appearance by Donald Tedrow" asserting that "[t]his court does not have jurisdiction over me or my property." The Tedrows have left the Territory and are no longer amenable to personal service. The Court has been assured by counsel for Mrs. Tedrow (who is also counsel for Mr. Tedrow in his special appearance) that no assets resulting from the sale of the house and land have left the Territory or will do so pending the outcome of this proceeding. The Court has jurisdiction over Mrs. Tedrow and her property, which includes the proceeds of any sale of the house and land. William Reardon, counsel for Mr. and Mrs. Tedrow, has also successfully petitioned for appointment as a "special guardian" of the Tedrow children for the purpose of selling the real estate and retaining the proceeds of the sale in his trust account until further order of the Court. He sought this status under a power of attorney from Mr. Tedrow with the approval of Mrs. Tedrow.

---

that Mr. Tedrow is the equitable owner (as that term is traditionally used) of the land or the house. As a matter of "black letter law" Mrs. Tedrow had the legal right to receive the title to the land and the house that goes with it. Her creditors had the right to seize the proceeds of any sale of the land and the right to insist that she not give up her legal right to receive title in anticipation of such a sale. Our decision that the Tedrows should retain half of the proceeds is an effort to prevent an equitable remedy from working inequity. Counsel for defendants is certainly right as a matter of law in stating that "[n]either the law of the relationship between a husband and wife or the Samoan land tenure system permits a conclusion that there is a divided 1/2 interest of each spouse during the marriage in the property acquired during the marriage." (Emphasis in the original.) If we were to accept this as a proposition limiting our ability to fashion an equitable remedy in this case, it would lead us not (as counsel wishes) to the conclusion that the whole proceeds should be regarded as belonging to Mr. Tedrow, but that the whole sum belongs to Mrs. Tedrow and can therefore be seized by her creditors.

141

We are satisfied that Mr. Tedrow's designation of Mr. Reardon as his attorney in fact with "full power to convey my residence located on the land above described and do all things necessary to effectuate such conveyance and transfer the proceeds thereof to me," coupled with Mr. Reardon's appearance in pursuance of this authority as petitioner in PR No. 22-87, gives the Court jurisdiction to enjoin Mr. Tedrow from transactions in connection with the property that is the subject of Mr. Reardon's petition. It is settled beyond peradventure that a person who comes into court seeking affirmative relief from a court thereby subjects himself to whatever favorable or unfavorable judgment should ensue. An unfavorable judgment need not be limited to a denial of the relief the plaintiff seeks; it can include orders requiring him to pay damages to some other party or to obey an injunction or subjecting him to penalties for contempt of court. A plaintiff cannot evade these consequences merely by designating another person as his "attorney in fact" with power to get for him all the benefits the court may award but not to subject him to any of the liabilities. It should not, however, be necessary to test this proposition in this case provided that Mrs. Tedrow and Mr. Reardon obey the Court's orders.

The Court had jurisdiction to issue its orders in this case and in PR No. 22-87 directing that no funds received in connection with the land or the house are to be removed from the Territory. At this time we reiterate that order and further order counsel for defendant, in that capacity and in his capacity as the petitioner in PR No. 22-87, to deposit any such funds in the registry of the Court where they will be held pending the resolution of any further motions by plaintiff, defendant, Mr. Reardon in his capacity as petitioner in PR No. 22-87, or any other proper party. It hardly seems necessary to add that participation or collusion by any person within this Court's jurisdiction in any effort to evade the effects of this order by removing assets from the Territory will be a violation of the order whether or not such person should be in physical or constructive possession of such assets.

No further transactions with regard to the

land or house shall be conducted without the approval of the Court.

Counsel for plaintiff is strongly urged to serve writs of garnishment upon any persons other than Mrs. Tedrow who might be in or come into possession of assets relevant to this case. This action should have been taken long ago.

It is so ordered.